**In re Marshall James DYKE, Debtor.**

**William E. HEITKAMP,
Trustee, Movant,**

v.

**Marshall James DYKE, Respondent.**

Bankruptcy No. 87–09170–H5–7.

United States Bankruptcy Court,
S.D. Texas,
Houston Division.

April 21, 1989.

David Askanase and Kris Thomas, Houston, Tex., for debtor; Hughes, Watters & Askanase, of counsel.

Marilee A. Madan and Dan Patchin, Houston, Tex., for movant; Calvin, Dylewski, Gibbs, Maddox, Russell & Verner, of counsel.

ORDER AND MEMORANDUM OPINION WITH RESPECT TO CROSS–MOTIONS FOR SUMMARY JUDGMENT ON TRUSTEE'S OBJECTION TO DEBTOR'S CLAIMED PENSION PLAN EXEMPTION

MARGARET A. MAHONEY,
Bankruptcy Judge.

The matter before me is the Trustee's Motion for Summary Judgment on his objection to the debtor's claim of an exemption based upon the debtor's interest in a pension plan. I have jurisdiction to enter a final order on the trustee's motion pursuant to 28 U.S.C. § 1334(a), 28 U.S.C. § 157(a) and the District Court's Order of Reference of Bankruptcy Cases and Proceedings. The proceeding which gave rise to the trustee's motion is a core proceeding under 28 U.S.C. § 157(b)(2)(B).

Under Rule 56 of the Federal Rules of Civil Procedure, which applies to contested matters pursuant to Bankruptcy Rules 7056 and 9014, a party is entitled to summary judgment upon demonstrating that there exists no genuine issue of material fact, and that the moving party is thus entitled to judgment as a matter of law. Since the issues in dispute are solely issues of law, summary judgment is not only appropriate but mandatory. After review of the arguments of counsel and legal precedent relevant to the dispute, I am granting trustee's motion for summary judgment in all respects.

### FACTUAL SUMMARY

The debtor, Marshall James Dyke, M.D., filed for relief under Chapter 7 on October 1, 1987. The debtor is the sole shareholder and director of a professional association known as the Conroe Ear, Nose and Throat

Clinic. The debtor has sought to prevent the trustee, on behalf of the estate's creditors, from reaching the debtor's interest in a pension plan titled the Conroe Ear, Nose and Throat Clinic, P.A., Pension Plan and Trust (Pension Plan). The debtor is the sole trustee of the Pension Plan, and his interest in it, which is 95 percent vested, amounts to $1,170,000.

As sole trustee of the pension plan and sole shareholder and director of the professional association which funds the plan, the debtor has exclusive control over all administrative aspects of the plan. This control vested in the debtor the power to determine the amount of funding for the plan, any modifications and amendments to the plan, the degree of borrowing permissible under the plan, and the manner in which the pension plan's funds are to be invested.

The debtor offers three arguments in the alternative to support his contention that his pension plan is beyond the reach of the trustee: (1) debtor's interest in the Pension Plan is not property of the estate under 11 U.S.C. § 541(c)(2); (2) even if such interest is property of the estate, there exists a federal exemption for such plans under 11 U.S.C. § 522(b)(2)(A); and (3) debtor's interest is subject to a valid state law exemption under Section 42.0021 of the Texas Property Code.

1. Whether Debtor's Interest in the Pension Plan Is Property of the Estate?

■ The expansive reach of the concept of property of the estate under 11 U.S.C. § 541(a) is subject to a narrow exception under 11 U.S.C. § 541(c)(2). The exception provides that "[a] restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title." The debtor argues that a qualified plan under the Employees Retirement Income Security Act (ERISA), since it is subject to statutory restrictions on transfers, falls within the exclusionary language of Section 541(c)(2).

The problem with debtor's contention is that it flies squarely into the face of Fifth Circuit precedent. *See In re Brooks*, 844 F.2d 258, 261 (5th Cir.1988); *In re Reagan*, 741 F.2d 95, 97 (5th Cir.1984); *In re Johnson*, 724 F.2d 1138, 1140–41 (5th Cir.1984); *In re Goff*, 706 F.2d 574, 587 (5th Cir.1983). In the case of *In re Goff*, debtor also posed the argument that the reference in Section 541(c)(2) to "applicable nonbankruptcy law" was intended to encompass pension trusts governed by ERISA because of the restrictions on assignment and alienation contained in ERISA. The court in *Goff* held that Section 541(c)(2) is limited to those trusts which qualify as spendthrift trusts under state law. *In re Goff*, 706 F.2d at 587. Thus, under the precedent established by *Goff*, pension plans governed by ERISA can find safe harbor in Section 541(c)(2) only if they qualify separately under state law as a spendthrift trust.

The debtor has not claimed that his pension plan qualifies as a spendthrift trust under state law, and given the self-settled nature of the pension plan and debtor's control over it, any argument in support of such a claim would be unavailing. Instead, the debtor has sought to directly attack the validity of the holding in *Goff* as incorrectly decided. Besides the fact that I am bound by Fifth Circuit precedent, every other circuit which has addressed the issue has held that ERISA is not "applicable nonbankruptcy law" for purposes of 11 U.S.C. § 541(c)(2). *In re Daniel*, 771 F.2d 1352, 1361 (9th Cir.1985); *In re Lichstral*, 750 F.2d 1488, 1490 (11th Cir.1985); *In re Graham*, 726 F.2d 1268, 1273 (8th Cir. 1984). The only argument which warrants consideration, since it could not have been addressed by the Circuit Courts cited above, is debtor's argument that the recent Supreme Court opinion in *Mackey v. Lanier Collections Agency & Service, Inc.*, 486 U.S. ——, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) alters the precedential effect of those cases.

The United States Supreme Court in *Mackey* held that a Georgia statute exempting longshoreman's vacation and holiday funds from garnishment was preempted by ERISA. The decision to strike down the antigarnishment statute was based on

ERISA's express preemption provision embodied in Section 514(a) (29 U.S.C. § 1144(a)). Section 514(a) provides that ERISA preempts "any and all state laws insofar as they may now or hereafter relate to an employee benefit plan." The Supreme Court in *Mackey* held that the Georgia anti-garnishment statute's express reference to ERISA employee benefit plans was fatal to the statute's constitutionality. The court, however, declined to strike down Georgia's general garnishment statute as it applied to welfare benefit plans. The court concluded that Congressional silence with respect to the alienation or assignment of welfare benefit plans as opposed to the statutory bar against alienation or assignment of pension benefit plans evidenced an intent on the part of Congress not to preempt creditor enforcement proceedings against participants of welfare benefit plans:

> Where Congress intended ERISA to preclude a particular method of state law enforcement of judgments, or extend an alienation protection to a particular type of ERISA plan, it did so expressly in this statute. Specifically, ERISA § 206(d)(1) bars (with certain enumerated exceptions) the alienation or assignment of benefits provided for by ERISA *pension* benefit plans. 29 U.S.C. § 1056(d)(1). Congress did not enact any similar provision applicable to ERISA *welfare* benefit plans.

*Mackey v. Lanier Collections Agency & Service, Inc.,* 108 S.Ct. at 2188 (emphasis in original).

Debtor argues that *Mackey* impliedly overrules *Goff,* which held that ERISA restrictions are ineffective in bankruptcy, and a pension plan must further qualify as a spendthrift trust under state law to be excluded from the estate. He asserts that *Mackey* confirms that pension plans which contain the transfer restrictions set forth in 29 U.S.C. § 1056(d)(1) are exempt from the reach of creditors. Given that creditors cannot reach the beneficial interest in an ERISA qualified pension plan, debtor maintains "there is no difference between the trust created by such a plan and a valid spendthrift trust since the only distinguish-

ing aspect of a valid spendthrift trust is that it protects the beneficiary's interest from claims of the beneficiary's creditors." Debtor further argues that to the extent that state spendthrift law relied upon by the court in *Goff* imposes the requirement that a trust not be self-settled to be a valid spendthrift trust, ERISA preempts such law to allow it. The debtor concludes that to the extent that *Goff* applied state spendthrift trust law to negate the effect of ERISA restrictions on transfer in bankruptcy, it must be reexamined. If preempted by ERISA, then ERISA restrictions on transfer remain effective in bankruptcy, and "ERISA is left as the only possible 'applicable nonbankruptcy law' under § 541(c)(2)."

Debtor's argument fails in two important respects. First, the Fifth Circuit in *Goff* did not resort to state spendthrift trust law to negate in bankruptcy the effect of ERISA's anti-alienation and assignment provisions. Instead, the court applied federal bankruptcy law:

> [T]he Bankruptcy Code was, generally, intended to broaden the "property of the estate" available to creditors in bankruptcy and, specifically, intended to limit any exemption of pension funds. These policies based upon provisions of the Code would be frustrated were ERISA's anti-alienation and assignment provisions applied with a sweeping brush.

*In re Goff,* 706 F.2d at 587.

Consequently, the court was able to safely conclude that since federal law and federal policies operated to negate ERISA's anti-alienation and assignment provisions, no preemption issue was presented by virtue of ERISA's non-displacement of federal law. 29 U.S.C. § 1144(d); *In re Goff,* 706 F.2d at 587.

*Mackey* only confirms that ERISA-covered pension benefit plans are exempt from creditor process when state law is employed to alienate a participant's benefits. *Goff,* on the other hand, holds that *as a matter of federal bankruptcy law,* ERISA's restrictions on alienation must succumb to Congressional intent to include within the estate "all legal or equitable interests of the debtor in property as of the

commencement of the case." *See* 11 U.S.C. § 541(a)(1). In no manner, does the Supreme Court's decision in *Mackey* overrule the central holding of *Goff* that ERISA's restraints on alienation are insufficient as a matter of bankruptcy law to avoid inclusion of a pension plan within the debtor's estate.

Second, even if ERISA preempts state spendthrift trust law, the conclusion debtor draws from this supposition simply doesn't follow. As previously noted, bankruptcy law *not* state spendthrift trust law operates to render ineffective in bankruptcy ERISA restrictions on alienation and assignment. Thus, irrespective of the effect of ERISA's preemption provisions on state spendthrift trust law, a debtor's interest in any ERISA covered plan will invariably be included as property of the estate under 11 U.S.C. § 541(a)(1). Preemption of state spendthrift law would simply preclude the use of Section 541(c)(2) to exclude from property of the estate a debtor's interest in a pension plan governed by ERISA. Preemption, however, would not elevate ERISA to the status of "applicable non-bankruptcy law." The holding in *Goff* precludes that result. Therefore, I need not reach the issue of whether ERISA preempts state spendthrift trust law; for even if I were to so find, I would nevertheless hold that an ERISA governed pension plan becomes property of the estate in accordance with *Goff* and sound bankruptcy policy.

Finally, the strongest argument against debtor's interpretation of Section 541(c)(2) is the fact that Congress considered ERISA pension plans in the Bankruptcy Code's exemption section. *See* 11 U.S.C. § 522(d)(10)(E)(iii); 11 U.S.C. § 522(b)(2)(A). Such consideration would be entirely unnecessary if Congress intended ERISA qualified plans to be excluded from the estate under Section 541. *In re Goff,* 706 F.2d at 582.

2. **Whether a Federal Exemption For Debtor's Pension Plan Exists Under 11 U.S.C. § 522(b)(2)(A)**

■ 11 U.S.C. § 522(b) allows a debtor to choose either the exemptions provided for under state law or those listed in Section 522(d) of the Bankruptcy Code. If a debtor elects the state exemptions, the debtor can also exempt "any property that is exempt under federal law, other than subsection (d)." 11 U.S.C. § 522(b)(2)(A). Since Dr. Dyke has elected the exemptions provided for under Texas law, he claims that his pension plan qualifies as exempt property under federal non-bankruptcy law. The basis for this claim rests on ERISA's prohibition against assignment or alienation of participants' benefits in an employee benefit plan in order to qualify for certain tax treatment under Internal Revenue Code 26 U.S.C. § 401(a)(13); 29 U.S.C. § 1056(d).

Again, debtor's argument runs squarely into the face of overwhelming precedent. The Fifth Circuit in *Goff* clearly rejected a federal exemption for ERISA governed pension plans. *In re Goff,* 706 F.2d at 586. Although debtor's observation that this conclusion is dicta is undoubtedly true, the extent to which the court in *Goff* analyzed the issue elevates the court's conclusion to persuasive if not binding precedence. Further, every circuit court which has addressed the issue directly has cited with strong approval the analysis and conclusion drawn in *Goff. In re Daniel,* 771 F.2d 1352, 1361 (9th Cir.1985); *In re Lichstral,* 750 F.2d 1488, 1491 (11th Cir.1985); *In re Graham,* 726 F.2d 1268, 1274 (8th Cir. 1984).

The court in *Goff* premised its holding on two lines of analysis. First, the court noted the absence of ERISA benefits in the House and Senate Reports' illustrative list of property exempt under other "federal law." It concluded that given the explicit reference to ERISA in other provisions of the Bankruptcy Code as well as the conspicuous prominence of ERISA at the time the Code was enacted, such absence was indicative of Congress' intent to exclude ERISA benefits from exemption under Section 522(b)(2)(A). *In re Goff,* 706 F.2d at 585. Second, the court looked at the distinction between ERISA and the federal statutes referred to in the illustrative list in terms of the nature of the property covered and the statutory language giving rise to restrictions against alienation. The court

found such distinctions indicative of Congress' intent to exclude ERISA benefits from exemption under Section 522(b)(2)(A). *In re Goff,* 706 F.2d at 586.

The debtor points to numerous errors and omissions from Congress' illustrative list of federal exemptions as evidence that Congress overlooked ERISA. Given the prominence of ERISA and reference to ERISA elsewhere in the Bankruptcy Code, I find such errors and omissions of less prominent statutory benefits not as compelling as the exclusion of ERISA from the list.

The debtor further attacks the conclusion in *Goff* by contending that the court distinguished ERISA from those statutes enumerated on the illustrative list by erroneously concluding that ERISA's restrictions on transfer relate only to qualification for special tax treatment. The debtor argues that the court ignored the effect of ERISA's restrictions on transfer on creditor collection actions. Debtor relies on *Mackey v. Lanier Collections Agency and Service, Inc., supra,* and *Commercial Mortgage Insurance, Inc., v. Citizens National Bank of Dallas,* 526 F.Supp. 510 (N.D.Tex.1981) as precedent refuting this conclusion. Both cases do stand for the proposition that ERISA's restrictions on transfer bar garnishment under state law of pension benefits by a creditor of a plan beneficiary. *Mackey v. Lanier Collections Agency and Service, Inc.,* 108 S.Ct. at 2188; *Commercial Mortgage Insurance, Inc., v. Citizens National Bank of Dallas,* 526 F.Supp. at 516. However, I do not find *In re Goff* to be inconsistent with the proposition as stated, for in both *Mackey* and *Commercial Mortgage,* ERISA restrictions on transfer were examined in light of their effect upon creditor collection procedures under state law. The court in *Goff* was well aware of and discussed the holding in *Commercial Mortgage* that ERISA's restrictions on transfer created a "federal exemption" for pension benefits. Nevertheless, the court concluded that as a matter of bankruptcy law, Congress meant to exclude ERISA from those statutes which give rise to a federal exemption under Section 522(b)(2)(A). *In re Goff,* 706 F.2d at

584, f.n. 27. The fact that ERISA may insulate plan benefits outside of bankruptcy did not lead the court in *Goff* to create an exemption within the meaning of Section 522(b)(2)(A). Whether such an exemption was intended was determined as a matter of bankruptcy law. *Mackey,* therefore, does not disturb the holding in *Goff* since its holding is necessarily limited to state law pursuant to 29 U.S.C. § 1144(d).

3. Whether Debtor's Interest in the Pension Plan is Subject to a Valid State Law Exemption under Section 42.0021 of the Texas Property Code.

As previously noted, debtor has elected the exemptions provided for under state law, rather than those provided for under Section 522(d)(1) of the Bankruptcy Code. Debtor consequently seeks refuge for his pension plan under a newly adopted Texas exemption statute which exempts from execution a broad range of ERISA qualified plans. Texas Property Code § 42.0021 in its entirety states the following:

(a) In addition to the exemption prescribed by Section 42.001, a person's right to the assets held in or to receive payments, whether vested or not, under a stock bonus, pension, profit-sharing, annuity, or similar plan or contract, including a retirement plan for self-employed individuals, or under an individual retirement account or an individual retirement annuity, including a simplified employee pension plan, is exempt from attachment, execution, and seizure for the satisfaction of debts unless the plan, contract, or account does not qualify under the applicable provisions of the Internal Revenue Code of 1986. A person's right to the assets held in or to receive payments, whether vested or not, under a government or church plan or contract is also exempt unless the plan or contract does not qualify under the definition of a government or church plan under the applicable provisions of the federal Employee Retirement Income Security Act of 1974.

(b) Contributions to an individual retirement account that exceed the amounts

deductible under the applicable provisions of the Internal Revenue Code of 1986 and any accrued earnings on such contributions are not exempt under this section unless otherwise exempt by law.

[3] The trustee contends that Section 42.0021 is preempted by ERISA. As noted previously, Section 514(a) of ERISA provides that ERISA "shall supersede any and all state laws insofar as they may now or hereafter relate to any employee benefit plan described in Section 1003(a) of the title and not exempt under Section 1003(b) of this title." 29 U.S.C. § 1144(a). Section 514(c)(2) of ERISA defines the term "state" to include "a state, any political subdivision thereof or any agency or instrumentality of either, which purports to regulate, directly or indirectly, the terms or conditions of employee benefit plans covered by this title." 29 U.S.C. § 1144(c)(2). It is beyond dispute that Section 42.0021 includes within its coverage employee benefit plans described in 29 U.S.C. § 1003(a). Section 42.-0021 also includes employee benefit plans exempt from the preemptive reach of ERISA, namely government and church employee benefit plans. 29 U.S.C. § 1003(b)(1), (b)(2). Finally, Section 42.-0021 includes investment plans wholly outside of coverage under ERISA, such as individual retirement accounts. Since the debtor seeks to exempt under Section 42.-0021 an employee benefit plan to which ERISA's preemption provision applies, the issue I must address is whether Section 42.0021 or some portion thereof "relates to" employee benefit plans within its coverage.

The Supreme Court in *Shaw v. Delta Airlines*, 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983), established that the phrase "relates to" must be construed in its "normal sense", which meant that a state law would be preempted "if it had connection with or reference to such plan." *Id.*, 103 S.Ct. at 2900. The court in *Shaw* also rejected the view that preemption applies only when a state law attempts to regulate an area expressly covered by ERISA, such as reporting or disclosure. *Id.*, 103 S.Ct. at 2900, n. 15. Further, the court in *Shaw* did not interpret the phrase

"relate to" to "preempt only state laws specifically designed to affect employee benefit plans." *Id.*, 103 S.Ct. at 2900. Finally, the Supreme Court has also held that even where the state legislature is attempting to further the goals of ERISA by enacting laws that are consistent with ERISA's substantive requirements, such "legislative good intentions do not save a state law within the broad preemptive scope of § 514(a)." *Mackey v. Lanier Collections Agency and Services, Inc.*, 108 S.Ct. at 2185.

Given the Supreme Court's interpretation of the phrase "relate to", the court in *Mackey* expended little analysis in determining that Georgia's anti-garnishment statute was preempted by ERISA. *Id.*, 108 S.Ct. at 2185. The statute's express reference to ERISA plans as well as the "different treatment" accorded to non-ERISA plans under the statute established the factual predicate for the court's conclusion. *Id.*, 108 S.Ct. at 2185, n. 4. Logically absent from the Court's analysis was any discussion of whether the Georgia statute was "in conflict with" ERISA's substantive provisions. The court in *Shaw* had already rejected the narrow interpretation of the phrase "relate to" as only embracing those state laws that directly clash with ERISA's substantive provisions. *Shaw v. Delta Airlines, Inc.*, 103 S.Ct. at 2900, n. 15.

Against this legal backdrop, debtor has raised several arguments in support of the proposition that Texas Property Code Section 42.0021 is not a state law which "relates to" an employee benefit plan under Section 514(a) of ERISA. First, debtor argues that despite the statute's explicit reference to federally tax exempt pension plans as a type of plan which the Texas statute is designed to exempt, Section 42.-0021 is not preempted since it does not purport to regulate the terms and conditions of employee benefit plans as is required under the definition of "state." *See* 29 U.S.C. § 1144(c)(2). Debtor goes on to contend that the phrase "terms and conditions" implies that for preemption to be triggered, the state law must impose some burden or substantive requirements on the

"content of or administration of an employee pension plan."

I reject debtor's argument on the basis that the Supreme Court in *Shaw* and *Mackey* implicitly, if not explicitly, rejected this narrow interpretation of the phrase "relate to". Although a direct clash between a state law and ERISA will trigger preemption under ERISA, the Supreme Court has not established such conditions as a necessary prerequisite for preemption. To the contrary, relying upon Congress' explicit command, the Court has interpreted the phrase "relate to" with such breadth that I find it difficult (if not impossible) to construe Section 42.0021 as a statute which does not relate to an employee benefit plan.

Although Section 42.0021 does not expressly refer to an ERISA employee benefit plan, the statute's reference to the "applicable provisions of the Internal Revenue Code of 1986" by necessity incorporates ERISA in its substantive test for exemption qualification. Under ERISA, an employee pension plan is defined as any plan which "1) provides retirement income to employees, or ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond." 29 U.S.C. § 1002(2)(A). Under the Internal Revenue Code, a qualified pension plan is similarly defined as a plan that provides for retirement income to employees. Treas.Reg. § 1.401–1(b)(1)(i). By definition, then, pension plans which qualify under the "applicable provisions of the Internal Revenue Code of 1986" are employee benefit plans subject to ERISA. Conversely, an employee benefit plan to qualify for favorable tax treatment must qualify under ERISA. *See* 26 U.S.C. § 401(a); *In re Komet*, 93 B.R. 498, 500, *reh'g. granted*, (Bankr.W.D.Tex.1988); *In re Hirsch*, 98 B.R. 1 (Bankr.D.Ariz.1988); *In re Brown*, 95 B.R. 216 (Bankr.N.D.Okla. 1989).

Despite the attempt to cloak regulation of an ERISA covered plan by reference to the Internal Revenue Code, the connection between Section 42.0021 and ERISA is nonetheless apparent. To qualify for the exemption, a plan must qualify under ERISA. Similar to the Georgia statute in *Mackey*, Section 42.0021 is directed at ERISA qualified plans. A debtor is able to qualify for use of the exemption and determine the amount which can be exempted only by reference to the provisions of ERISA. Contributions in excess of amounts allowable under ERISA, as well as contributions in those pension plans which run afoul of ERISA's substantive restrictions, would not be exempt under Section 42.0021. Section 42.0021 singles out ERISA employee pension plans for different treatment than non-ERISA employee pension plans by implicitly referring to ERISA through its incorporation of Internal Revenue Code's ERISA qualification requirements. *Mackey v. Lanier Collections Agency & Service*, 108 S.Ct. at 2185, n. 4.

Three recent bankruptcy cases have addressed the issue of whether a state exemption statute which does not directly refer to ERISA, but instead refers to those sections of the Internal Revenue Code that qualify an ERISA covered plan for tax benefits nevertheless "relates to" an employee benefit plan for preemptive purposes. *See In re Komet*, 93 B.R. 498 *reh'g. granted*, (Bankr.W.D.Tex.1988); *In re Hirsch*, 98 B.R. 1 (Bankr.D.Ariz., 1988); *In re Brown*, 95 B.R. 216 (Bankr.N.D.Okla. 1989). All three cases, including the *Komet* case which specifically addressed Section 42.0021, held that the exemption statute related to an employee benefit plan within the meaning of 29 U.S.C. § 1144(a) based on reference in each of the statutes to those sections of the Internal Revenue Code which interface with ERISA. *Id.*

To rebut the strong inference that Section 42.0021 "relates to" an employee benefit plan within the meaning of 29 U.S.C. § 1144(a), debtor argues that the statute affects employee benefit plans in "too tenuous, remote or peripheral manner to warrant a finding that the law 'relates to' the plan." *Shaw v. Delta Airlines, Inc.*, 103 S.Ct. at 2890, n. 21. Although the *Shaw* court recognized that a statute's affect on employee benefit plans may be too tenuous, remote or peripheral, in light of *Mackey* and my discussion above, I find it difficult

to conclude that Section 42.0021 falls within that narrow category of cases.

Debtor has cited the Fifth Circuit's opinion in *Sommers Drug Stores v. Corrigan Enterprises, Inc.*, 793 F.2d 1456 (5th Cir. 1986) as support for this proposition. Although the *Sommers* case established a two part test for determining "whether a state law of general application affects employee benefit plans in too tenuous, remote or peripheral manner to be preempted", I needn't reach that test. I find that Section 42.0021 is clearly not a state law of general application. *Id.* at 1467. Instead, Section 42.0021 is a state law of specific application designed to regulate in part ERISA plan benefits. It specifically exempts qualified benefit plans from creditor attachment. This is not a state law which exempts many types of property and only indirectly affects qualified benefit plans. In view of the above, I, therefore, hold that Section 42.0021 of the Texas Property Code *in part* "relates to" an employee benefit plan within the meaning of 29 U.S.C. § 1144(a). My holding, however, is limited to the first sentence of Section 42.0021(a), since 29 U.S.C. § 1144(a) specifically excludes government or church plans, and Section 42.0021(b), which applies only to individual retirement accounts, cannot relate to an employee benefit plan.

Upon determining that Section 42.0021 in part relates to an employee benefit plan, the next step in ERISA preemption analysis is to determine if the offending portion of Section 42.0021 is saved by any of the narrow exceptions to 29 U.S.C. § 1144(a) enumerated in 29 U.S.C. § 1144(b). These exceptions to ERISA's preemption provision apply to a narrow category of state laws regulating insurance, banking or securities. *See,* 29 U.S.C. § 1144(b). Since none of these exceptions is applicable to Section 42.0021, debtor's only remaining argument is premised on 29 U.S.C. § 1144(d), which provides that ERISA "shall [not] be construed to alter, amend, modify, invalidate, impair or supersede any law of the United States ..." 29 U.S.C. § 1144(d).

According to debtor, state exemption laws which are incorporated within Section 522(a)(2), (b) are so intertwined with federal law that their preemption would impair the operation of the Bankruptcy Code. Debtor relies upon the Supreme Court's opinion in *Shaw v. Delta Airlines, Inc.* The Court declined in *Shaw* to preempt a New York Human Rights Law to the extent that such law provided a means of enforcing Title VII, since to do so would impair Title VII's enforcement scheme. *Shaw v. Delta Airlines, Inc.*, 103 S.Ct. at 2902. Debtor also finds support in the Fifth Circuit's opinion in *In re Goff, supra.* Debtor reads *Goff* as "federalizing" state spendthrift trust law, in order to elevate state spendthrift trust law above ERISA's restrictions on transfer.

Finally, debtor notes that numerous states have opted out of the federal exemption scheme, but enact or incorporate by reference 11 U.S.C. § 522(d)(10)(E) as an applicable state exemption. Preemption, according to debtor, creates a paradoxical result, in that Section 522(d)(10)(E) would remain a valid non-preemptible federal exemption, while identical language contained in a state exemption statute would be preempted.

Debtor's reliance on *Shaw* in my opinion is misplaced. Although the court in *Shaw* held that complete preemption of New York's Human Rights Law would "impair" Title VII within the meaning of 29 U.S.C. § 1144(d), it did so on narrow, circumscribed grounds. The Court refused to conclude that Title VII transforms state fair employment laws into federal laws. It rejected as simplistic the "double savings clause argument" that because ERISA does not preempt Title VII, and Title VII does not preempt state fair employment laws, then ERISA does not preempt state fair employment laws. *Id.*, 103 S.Ct. at 2902. The Court's response to a broader interpretation of Section 1144(d) is illustrative to the issue before me:

While 514(d) may operate to exempt provisions of state laws upon which federal laws depend for their enforcement, the combination of Congress' enactment of an all-inclusive pre-emption provision and its enumeration of narrow specific excep-

tions to that provision makes us reluctant to expand § 514(d) into a more general savings clause. *Id.*

The Court in *Shaw* consequently expanded 29 U.S.C. § 1144(d) to preserve only those state laws upon which Title VII substantially depended for enforcement of its provisions. *Id.*, 103 S.Ct. at 2902. As to state laws which prohibit employment practices that are lawful under Title VII, the Court held that federal law would not be impaired if such state laws were preempted by ERISA. *Id.*, 103 S.Ct. at 2903. The Court noted that Title VII is neutral on the subject of employment practices it does not prohibit, leaving to states the power to legislate with respect to those practices, so long as such legislation does not "relate to" an employee benefit plan under 29 U.S. C. § 1144(a).

I do not believe that the specific content of state exemption laws is critical to 11 U.S.C. § 522 in the same manner that the specific content of state laws at issue in *Shaw* were critical to the enforcement scheme of Title VII. Section 522(b)(2) rather than federalizing all state exemption laws remains neutral on the substantive content of state exemption laws. Preemption of Section 42.0021 will not impair Section 522. The elective scheme in Section 522, as well as the states' authority to continue to enact exemptions which do not transgress ERISA's preemption provisions, will remain intact. I view Section 42.0021, and all state exemption laws, as analogous to those state laws referred to in *Shaw* which regulate employment practices towards which Title VII remains neutral. As in *Shaw*, such laws are subject to preemption under ERISA. Further, in *Shaw*, the federal dependency upon state laws determined to be so pivotal to the enforcement scheme of Title VII found strong textual support within Title VII itself. *Id.*, 103 S.Ct. at 2902. Nothing in the legislative history or the statutory language of 11 U.S.C. § 522 indicates any federal dependency on the substantive content of state exemption laws. The only legislative attitude towards state exemption laws which can be gleaned from Section 522 is one of strict neutrality.

To allow state exemption laws to evade ERISA's preemptive reach on the basis that preemption of such laws would impair the Bankruptcy Code in my opinion would impermissibly expand 29 U.S.C. § 1144(a) into the "more general savings clause" the Supreme Court sought to preclude. To hold otherwise, would effectively "federalize" all state laws to which particular sections of the Bankruptcy Code makes reference. Such a result is untenable in light of the legislative history of the Bankruptcy Code, the legislative intent of ERISA's preemption of state law and Supreme Court precedent.

Debtor's reliance on *Goff* as precedent for the Bankruptcy Code's federalization of state law is similarly misplaced. Debtor's reading of *Goff* as federalizing state spendthrift trust law in order to elevate state spendthrift trust law above ERISA's restrictions on transfer is at odds with my reading of *Goff*. As noted previously in this opinion, I view the Courts holding in *Goff* obviating ERISA's restrictions on transfer as grounded solely in federal bankruptcy law. The Court in no way determined that state spendthrift trust law was federalized, neglecting to reach the issue of ERISA's preemptive effect on state spendthrift trust law. I find no precedent for federalizing Section 42.0021 in the *Goff* opinion.

Debtor's final point that preemption of state exemption laws will create a paradox in those jurisdictions which have opted out of the federal exemption scheme, yet maintain an exemption for pension plans similar to the one contained in Section 522(d) is undoubtedly true. The creation of this paradoxical situation, however, is not before me, since Texas has not chosen to opt out of the federal exemption scheme. Although the issue must nevertheless be addressed since preemption of Section 42.0021 will undoubtedly raise concerns as to the preemption of other state exemption laws, the paradoxical effect described by debtor is insufficient to rebut the reasons stated in this opinion for ERISA's preemptive effect on Texas Property Code Section 42.0021.

I therefore hold that 29 U.S.C. § 1144(a) [Section 514(a) of ERISA] preempts the first sentence of Section 42.0021(a) of the Texas Property Code. Therefore, the trustee's motion for summary judgment is granted, and debtor's claim of an exemption for his pension plan is denied.