**In re Gene Leroy FRITSVOLD and Kristi Lenore Fritsvold, Debtors.**

**Bankruptcy No. 3–89–2275.**

United States Bankruptcy Court, D. Minnesota, Third Division.

June 7, 1990.

2. The value of the collateral converted was $54,000.

Keith Simons, Hopkins, Minn., for debtors.

Michael Iannacone, St. Paul, Minn., for trustee.

## MEMORANDUM ORDER

DENNIS D. O'BRIEN, Bankruptcy Judge.

This matter came on for hearing on March 16, 1990 upon the timely objection of Trustee Michael J. Iannacone to Debtor Gene Leroy Fritsvold's claimed exemption of his interest in the Research, Incorporated Profit Sharing Retirement Plan and Trust (hereinafter Research Plan), a Plan available to him through his employment with Research, Incorporated; and, Debtors' Motion seeking a determination that the interest is not an asset of the bankruptcy estate.

The Trustee appeared on his own behalf. Debtors were represented by Keith E. Simons. The Court has jurisdiction to hear and determine this matter pursuant to 28 U.S.C. §§ 157 and 1334, and Local Rule 108. This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2)(B).

### I.

### FACTS

Debtors filed their voluntary petition under Chapter 7 of the Bankruptcy Code on June 22, 1989. At the time of filing, the Debtors selected the federal exemptions pursuant to 11 U.S.C. § 522(d). Mr. Fritsvold listed his interest in the Research Plan on Schedule B–3 of the petition, and valued

it at $15,000. Personal property shown as exempt on Schedule B–4 of the petition did not include Mr. Fritsvold's interest in the Research Plan. On August 18, 1989, the Debtors amended their Schedule B–4 to select state exemptions. Again Mr. Fritsvold's interest in the Research Plan was not claimed as exempt on the Amended Schedule B–4. On January 17, 1990, the Debtors filed their Second Amended Schedule B–4 and claimed as exempt Mr. Fritsvold's interest in the Research Plan pursuant to M.S.A. § 550.37, Subd. 24.

According to the records filed with the Court, the Research Plan was originally established on October 1, 1966 and subsequently amended on October 1, 1989 by Research, Incorporated as a sponsoring employer for its eligible employees. Its purposes, as described in Topic No. 1, p. 1, are *"to reward them [Employees] for their efforts to make the Employer's business successful,* and to encourage and provide the opportunity for Employees to make regular and systematic savings from current income by payroll deduction." (Emphasis added.) The Plan is described as a profit sharing plan and trust with a cash or deferred (salary reduction) arrangement. The Plan year is twelve consecutive months ending on September 30 of each year. It is administered by an Administrative Committee appointed by Research, Incorporated. The Committee's duties are to keep Plan records, determine eligibility for participation and benefits, interpret the Plan, communicate with Participants and their beneficiaries, and generally to manage Plan operations. The Administrative Committee, named in the Plan Summary, is the agent for service of legal process, although the Plan Trustees may also be served. Mr. Fritsvold was neither an Administrative Committee member nor a Plan Trustee when the Fritsvolds filed their bankruptcy petition.

The Plan is a qualified ERISA Plan. It contains a nonalienation clause with the language required by the ERISA Statute and the Internal Revenue Code in order to qualify the Plan for favorable tax treat-

194

ment.[1] At the time of filing, Mr. Fritsvold was a qualified Participant, by virtue of his ten-year employment with Research, Incorporated as an electronic technician. As a Participant, Mr. Fritsvold's interest in the Plan is augmented by two streams of income. The first, Elective Contributions, represents his own contributions to the Plan which he authorizes Research, Incorporated, to withhold from his salary via payroll deductions equal to a percentage of his compensation. The withholding procedure allows employees to avoid paying taxes on those contributions. The maximum amount of Elective Contributions is to be determined on an annual basis by Research, Incorporated. In 1989, the maximum tax-sheltered amount Mr. Fritsvold could contribute as an Elective Contribution to the Research Plan, and all other similar plans, was $7,627. Any excess would be taxable to him as ordinary income. The Research Plan also contains provisions regarding opportunities to change, discontinue, or resume elective and voluntary contributions, as well as roll over distributions from a previous employer's qualified plan, at Mr. Fritsvold's option.

The second stream of income which may increase Mr. Fritsvold's interest in the Plan comes from Research, Incorporated, which can, but is not obligated to, make contributions to the Trust as either an Employer Discretionary or Employer Matching contribution. Assets from both the employee and the employer are deposited into a Trust. Each participant has a separate account, and *once in the Trust, the money belongs exclusively to plan participants, such as Mr. Fritsvold, and their beneficiaries.* (Emphasis added.)

Testamentary Distributions, provide that if a married employee entitled to distributions from the Research Plan dies during the pendency of his or her employment, an automatic distribution is made to the employee's spouse *"unless he or she has consented in writing to your designation of a different or additional beneficiary."* (Emphasis added.)

Testamentary distributions are not the only way in which Participants obtain portions of their Plan interest. Participants can obtain a lump sum, cash-out distribution if: their employment terminates and they are fully vested; they are willing to incur additional tax; and upon retirement after the age of 59½.

On January 31, 1990, the Trustee timely filed his objection to exemption of Mr. Fritsvold's interest in the Research Plan on the grounds that M.S.A. § 550.37, Subd. 24 is pre-empted by the ERISA Statute. On February 23, 1990, the Debtors filed their Motion for a determination that Mr. Fritsvold's interest in the Research Plan is not property of the bankruptcy estate pursuant to 11 U.S.C. § 541(c)(2), or, in the alternative, that it is exempt property pursuant to M.S.A. § 550.37, Subd. 24.

## II.

### ISSUES

1. Is the Research, Incorporated Profit Sharing Retirement Plan and Trust excluded from property of the estate under 11 U.S.C. § 541(c)(2)?

2. Is M.S.A. § 550.37, Subd. 24, pre-empted by the Employee Retirement Income Security Act (ERISA) 29 U.S.C. § 1001 *et seq.* to the extent that the state statute applies to ERISA plans or their benefits?

## III.

### DISCUSSION

1. *Application of 11 U.S.C. § 541.*

■ The Debtors argue that Mr. Fritsvold's interest in the Research Plan is not property of the bankruptcy estate because the Plan's anti-alienation clause qualifies it as a "spendthrift trust" under Minnesota law. The relevant provision states:

"Nonassignment and Domestic Relations Orders. You may not assign your account and your account is not available to your creditors. Upon receipt of a qualified domestic relations order, how-

1. 26 U.S.C. § 401(a)(13). 29 U.S.C. § 1056(d).

ever, the Committee must honor a decree or order issued by a court that obligates you to pay a portion of your Plan benefits to your spouse, former spouse, child, or other dependent. All or a portion of your interest in the Plan may be used to satisfy the obligations. The Committee will determine the validity of any domestic relations order it receives."

The Debtors argue that the interest in the Plan is excluded from the estate pursuant to 11 U.S.C. § 541(c)(2).[2]

■ The law concerning exclusions from property of the estate pursuant to 11 U.S.C. § 541(c)(2) is well settled in this jurisdiction. In 1983, the Fifth Circuit concluded that assets such as pension and profit sharing plans initially come into the Debtor's estate and are thereafter exempted from it by means of the Debtors' election of either the federal or state exemption scheme. Only those assets which qualify as "spendthrift trusts" under relevant state law are excluded from the estate pursuant to 11 U.S.C. § 541(c)(2).[3] The Eighth Circuit adopted this conclusion in *In re Graham*, 726 F.2d 1268 (8th Cir.1984).

■ In Minnesota, a spendthrift trust is one in which: (1) the trust implicitly or explicitly prohibits the voluntary and involuntary alienation of the beneficiary's interest; (2) the beneficiary is a *donee* or *testamentary beneficiary* and is not the settlor of the trust; and (3) the beneficiary has no present dominion or control over the trust corpus.[4]

In the instant case, while the Research Plan satisfies the first element, it fails the second and third elements. It fails the second element because Mr. Fritsvold is clearly not a donee or testamentary benefi-

ciary. His interest in the Plan is funded by tax-deferred income earned by him and ultimately taxed to him as income on distribution.

The Plan also fails the third element because Mr. Fritsvold retains considerable control over the trust corpus. For example, he can elect to contribute substantial money to the plan under the Elective Contribution option, limited only by his willingness to incur less advantageous tax consequences. He can change, discontinue, or resume contributions, and with the consent of his spouse, he can elect a beneficiary of his choice other than his spouse.

Accordingly, for the reasons discussed above, the Research, Incorporated Plan does not qualify as a spendthrift trust under relevant state law. Therefore, Mr. Fritsvold's interest in it is not excluded from the estate under 11 U.S.C. § 541(c)(2).

2. *Pre-emption.*

■ The Trustee challenges the claimed exemption on the grounds that M.S.A. § 550.37, Subd. 24, the state statute under which it is claimed, has been pre-empted by the ERISA Statute. He argues that the Minnesota statute violates Article VI, Clause 2 of the United States Constitution, and can have no application to the ERISA Plan.

Congress enacted the ERISA statute pursuant to general powers conferred on it by Article I, § 8 of the United States Constitution.[5] The purpose of ERISA is to provide a uniform system of federal regulation for privately administered welfare and pension benefit plans. The perceived underlying benefit of federal regulation is encouragement of individual attempts to

---

**2.** 11 U.S.C. § 541(c)(2) provides: "A restriction on the transfer of a beneficial interest of the debtor in a trust that is enforceable under applicable nonbankruptcy law is enforceable in a case under this title."

**3.** *Matter of Goff,* 706 F.2d 574 (5th Cir.1983).

**4.** *In re Hansen,* 84 B.R. 598 (Bankr.Minn.1987). *See also In re Loe,* 83 B.R. 641 (Bankr.Minn. 1988). *And see In re Moulton's Estate,* 233 Minn. 286, 46 N.W.2d 667 (1951).

**5.** Article I, § 8, Cl. 1, in enumerating Congress' powers, reads as follows:

"... provide for the common Defense and general Welfare of the United States...."

Article I, § 8, Cl. 18, in pertinent part, reads as follows:

"... To make all Laws which shall be necessary and proper for carrying into Execution the foregoing Powers, and all other Powers vested by this Constitution in the Government of the United States, or any Department or Officer thereof."

provide for future needs through savings, whether those needs are for welfare services or retirement funds, thus limiting the risk that public funds may be required to provide for those needs now or in the future.[6]

In § 514(a) of the statute, consistent with the Supremacy Clause, Congress declared that ERISA "shall supersede any and all state laws as they may now or hereafter relate to any employee benefit plan...." 29 U.S.C. § 1144(a).[7]

In its most recent decision on the scope of § 514(a), *Mackey v. Lanier Collections Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988), the United States Supreme Court ruled that § 514(a) of the ERISA Statute has a broad pre-emptive effect. The Court concluded that Congress vested the power to regulate privately administered ERISA-qualified health and welfare and pension benefit plans exclusively in the federal government. Accordingly, the phrase "relate to" in § 514(a) was interpreted to include state laws merely affecting ERISA plans, whether by design or otherwise. In a prior opinion, the Supreme Court concluded that even

where state statutes appear to further the purpose of the ERISA Statute, they are nonetheless pre-empted by § 514(a).[8]

The apparent interpretation by the Supreme Court of the pre-emptive scope of the ERISA Statute, as it applies to state exemptions, was questioned by The Honorable Larry E. Kelly in *In re Volpe,* 100 B.R. 840 (Bankr.W.D.Tex.1989). Chief Judge Kelly concluded that a state law concerning employee benefit plans "relates to" the ERISA Statute within the meaning § 514(a) if, but only if, the law "has reference to" ERISA plans. *Id.* at 848. He then decided that the Texas statute at issue in *Volpe* was not pre-empted. That result is at odds with caselaw in his own jurisdiction as well as others.[9]

The Minnesota exemption statute specifically references ERISA pension plans in describing the benefits which may be exempt.[10] But even if it did not, the statute would still have "reference to" ERISA plans to the extent that the statute would otherwise apply to them or to benefits under them. A state statute has reference to the subject matter of federal legislation if

---

**6.** The legislative history of the ERISA Statute, later codified at 29 U.S.C. § 1001(b),(c), reads in pertinent part:

"... (b) It is hereby declared to be the policy of this Act to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries, by requiring the disclosure and reporting to participants and beneficiaries of financial and other information with respect thereto, by establishing standards of conduct, responsibility, and obligation for fiduciaries of employee benefit plans, and by providing for appropriate remedies, sanctions, and ready access to the Federal courts.

"(c) It is hereby further declared to be the policy of this Act to protect interstate commerce, the Federal taxing power, and the interests of participants in private pension plans and their beneficiaries by improving the equitable character and the soundness of such plans by requiring them to vest the accrued benefits of employees with significant periods of service, to meet minimum standards of funding, and by requiring plan termination insurance."

*And see Pilot Life v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987).

**7.** Article VI, Cl. 2 of the United States Constitution, the "Supremacy Clause", provides:

"... This Constitution, and the Laws of the United States Which shall be made in Pursuance

thereof; and all Treaties made, or which shall be made under the Authority of the United States, shall be the supreme Law of the Land; and the Judges in every State shall be bound thereby, any Thing in the Constitution of the Laws of any State to the Contrary notwithstanding...."

**8.** *Shaw v. Delta Air Lines, Inc.,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1983).

**9.** *In re Dyke,* 99 B.R. 343 (Bankr.S.D.Tex.1989). *In re Brown,* 95 B.R. 216 (Bankr.N.D.Okla.1989).

**10.** M.S.A. § 550.37, Subd. 24 reads in pertinent part: "Employee benefits. The debtor's right to receive present or future payments, or payments received by the debtor, under a stock bonus, pension, profit sharing, annuity, ... individual retirement annuity, simplified employee pension, or similar plan or contract on account of illness, disability, death, age, or length of service:

(1) to the extent the plan or contract is described in section 401(a), 403, 408, or 457 of the Internal Revenue Code of 1986 as amended, or payments under the plan or contract are or will be rolled over as provided in section 402(a)(5), 403(b)(8), or 408(d)(3) of the Internal Revenue Code of 1986, as amended...."

it has significant connection with, or impact on, that subject matter in the context of the policy and purposes upon which the federal legislation is premised. Given the broad policy and purpose of ERISA, it can hardly be argued that a state exemption statute which applies to such plans, or to the benefits to be distributed under them, has no significant connection with, or impact on, the subject matter of ERISA legislation.

Accordingly, for the reasons stated above, M.S.A. § 550.37, Subd. 24, is pre-empted by the ERISA Statute, and can have no application to Mr. Fritsvold's interest in the Research Plan.

### IV.

### CONCLUSION

Because the Research Plan does not qualify as a spendthrift trust under relevant Minnesota law, Gene Leroy Fritsvold's interest in the Research Plan is not excluded from the estate pursuant to 11 U.S.C. § 541(c)(2).

The Minnesota Pension Statute, M.S.A. § 550.37, Subd. 24: "relates to" the ERISA Statute; is pre-empted by ERISA; has no application to the Debtor's ERISA Plan; and, is not a valid source for exemption of the Debtor's interest in the Plan.

Accordingly, IT IS HEREBY ORDERED:

1. That the Trustee's objection to Debtor's exemption is sustained.

2. That the Debtor's interest in the Research Plan is property of the bankruptcy estate.