**In re Harvey KOMET & Eleanor B. Komet, Debtors.**

**Bankruptcy No. 88–50379–C.**

United States Bankruptcy Court, W.D. Texas, San Antonio Division.

July 5, 1989.

Claiborne B. Gregory, Jr., Gresham, Davis, Worthy & Moore, San Antonio, Tex., for debtors.

Ruth Lown, Wolff & Wolff, San Antonio, Tex., for First City Nat. Bank of San Antonio.

Gloria Scott, Martin & Drought, Inc., San Antonio, Tex., for San Antonio Sav. Ass'n.

James H. Barrow, Kaufman, Becker, Clare & Padgett, Inc., San Antonio, Tex., for Texas Commerce Bank—San Antonio.

Richard H. Weinstein, Oppenheimer, Rosenberg, Kelleher & Wheatley, Inc., San Antonio, Tex., Employee Benefits Committee, Section of Taxation State Bar of Texas.

## DECISION AND ORDER

LEIF M. CLARK, Bankruptcy Judge.

This court previously heard the objections of First City Bank–Central Park, N.A., First City Bank–Forum, N.A., San Antonio Savings Association and Texas Commerce Bank–San Antonio ("creditors") to the exemptions claimed by Harvey Komet and Eleanor B. Komet ("debtor") in a pension plan and a profit sharing plan, pursuant to Bankruptcy Code Section 522(b)(2)(A) and the recently enacted Texas exemption statute for retirement plans, Section 42.0021 of the Texas Property Code. Tex.Prop.Code, § 42.0021 (West pamphl. ed. 1988). In light of the U.S. Supreme Court's decision in *Mackey v. Lanier Collections Agency & Service, Inc.,* 486 U.S. 825, 108 S.Ct. 2182, 100 L.Ed.2d 836 (1988) (hereinafter *Mackey*), this court held that the Texas exemption statute was unavailable as it was preempted by the Employee Retirement Income Security Act of 1974 ("ERISA"). *In re Komet,* 93 B.R. 498 (Bankr.W.D.Tex. 1988); *see* 29 U.S.C. § 1144(a).

The debtors moved to reconsider, to further argue the preemption issue. This court granted the debtors' motion, heard extensive oral argument, and considered the briefs submitted not only by the parties to this case but also from the amicus curae, the Employee Benefit Committee, Section of Taxation for the State Bar of Texas.

After careful reconsideration of this court's previous ruling, and with the benefit of decisions since rendered by other bankruptcy courts in Texas on the same or similar issue, I reaffirm my decision that the Texas exemption statute for retirement plans is indeed at least partially preempted by ERISA, and certainly preempted in this case. *See In re Dyke,* 99 B.R. 343, 19 BCD 105 (Bankr.S.D.Tex.1989); *In re Volpe,* 100 B.R. 840 (Bankr.W.D.Tex.1989); *In re Laxson,* 102 B.R. 85 (Bankr.N.D.Tex.1989). However, this court vacates its order sustaining creditors' objections to the claimed exemptions. The court will allow the debtors to retain their plans pursuant to Code Section 522(b)(2)(A), finding these plans are exempt by virtue of the anti-alienation provisions of ERISA. ERISA § 206(d)(1), *codified at* 29 U.S.C. § 1056(d); *see also* 26 U.S.C. § 401(a)(13).

## LEGAL ANALYSIS

I. *Texas' Exemption for ERISA tax-qualified retirement plans is pre-empted by operation of Section 514(a) of ERISA.*

Following *Mackey,* this court previously found that Texas' exemption statute for ERISA tax-qualified employee pension benefit plans "relates to" ERISA and is thereby preempted. *In re Komet,* 93 B.R. 498 (Bankr.W.D.Tex.1988), reh'ng. granted; *see* Tex.Prop.Code, § 42.0021 (West pamphl. ed. 1988). I reaffirm that decision here, for the following reasons. First, the precise language of *Mackey* itself compels that conclusion. Second, the expansive scope of ERISA supports *Mackey's* equally expansive application of Section 514(a) of ERISA. Finally, even under a more limited reading of the scope of pre-emption, such as that suggested in *Fort Halifax* (cited and discussed *infra*), Texas' statute impermissibly encroaches upon the due administration of ERISA plans, compelling a finding of pre-emption.

A. *The binding precedent of Mackey compels a finding that Texas' exemption statute for ERISA-qualified plans is pre-empted under ERISA Section 514(a).*

The Supreme Court in *Mackey* observed that the Georgia anti-garnishment provision there under review

> expressly refers to—indeed, solely applies to—ERISA employee benefit plans ... "A law 'relates to' an employee benefit plan, in the normal sense of the phrase, if it has a connection with or reference to such a plan." ... we have reaffirmed this rule, concluding that state laws which make "reference to" ERISA plans are laws that "relate to" those plans within the meaning of Section 514(a).....

*Mackey,* 486 U.S. at ——, 108 S.Ct. at 2185, 100 L.Ed.2d at 843.[1] Under the expansive reading given to Section 514(a) by *Mackey,* it is nearly impossible for a state statute such as Section 42.0021 of the Texas Property Code to survive pre-emption. *In re Dyke,* 99 B.R. 343, 348, 19 BCD 105, 109 (Bankr.S.D.Tex.1989) (Mahoney, B.J.); *In re Laxson,* 102 B.R. 85 (Bankr.N.D.Tex. 1989) (McGuire, B.J.); *contra In re Volpe,* 100 B.R. 840 (Bankr.W.D.Tex.1989) (Kelly, B.J.). In *Dyke,* Bankruptcy Judge Margaret Mahoney pointed out that

> [g]iven the Supreme Court's interpretation of the phrase "relate to," [in *Shaw v. Delta Air Lines,* 463 U.S. 85, 103 S.Ct. 2890, 77 L.Ed.2d 490 (1985)] the court in *Mackey* expended little analysis in determining that Georgia's anti-garnishment statute was pre-empted by ERISA. The

statute's express reference to ERISA plans as well as the "different treatment" accorded to non-ERISA plans under the statute established the factual predicate for the court's conclusion. Logically absent from the Court's analysis was any discussion of whether the Georgia statute was "in conflict with" ERISA's substantive provisions. The Court in *Shaw* had already rejected the narrow interpretation of the phrase "relate to" as only embracing those state laws that directly clash with ERISA's substantive provisions.

*In re Dyke, supra,* 99 B.R. at 348, 19 BCD at 109 (citations omitted).

I concur in Judge Mahoney's evaluation of *Mackey* and its impact on Texas' exemption law for private retirement plans governed by ERISA.[2] It is simply not possible to evade the clear mandate that a law which "makes reference to" an ERISA plan faces pre-emption under Section 514(a). *See* 120 Cong.Rec. H29197 (1974) (remarks of Rep. Dent) (pre-emption principle is intended to be applied in its broadest sense to foreclose any non-Federal regulation of employee benefit plans); *see also Cefalu v. B.F. Goodrich Co.,* 871 F.2d 1290 (5th Cir. 1989) (state laws beyond the scope of ERISA pre-emption are few). The Texas statute, by incorporating ERISA,[3] seeks to insulate ERISA pension benefits from the reach of creditors, an area already regulated by ERISA. ERISA § 206(d), *codified at* 29 U.S.C. § 1056(d); 26 U.S.C. § 401(a)(13)(B); 26 CFR § 1.401(a)–13(b)(1); *see Commercial Mortgage Ins. Inc. v. Citizens National Bank of Dallas,* 526

---

**1.** The Georgia anti-garnishment statute made reference to both pension and welfare benefit plans:

> Funds or benefits of a pension, retirement or employee benefit plan or program subject to the provisions of the federal Employee Retirement Income Security Act of 1974, as amended, shall not be subject to the process of garnishment ... unless such garnishment is based upon a judgement for alimony or for child support.

Ga.Code Ann. Sections: 18–4–22.1 (1982).

**2.** I must also therefore respectfully disagree with my colleague, Judge Larry E. Kelly, that ERISA's preemption occurs only to the extent

the Texas statute "purport[s] to regulate the terms and conditions of an employee benefit plan ... [or to] affect the relationship between the principal ERISA entities." *See In re Volpe,* 100 B.R. 840 (Bankr.W.D.Tex.1989).

**3.** I reiterate my earlier ruling that Section 42.-0021's use of references to sections of the Internal Revenue Code does not rescue the statute from relating to ERISA. *See In re Komet,* 93 B.R. 498, 500 (Bankr.W.D.Tex.1989); *see also In re Dyke,* 99 B.R. 343, 19 BCD 105, 109 (Bankr.S. D.Tex.1989). Only those benefits which are "ERISA-qualified" obtain the favorable tax treatment set out in Section 401 *et seq.* of the Internal Revenue Code. 26 U.S.C. §§ 401(b), 410.

F.Supp. 510 (N.D.Tex.1981). "[A]ny state law which singles out ERISA plans, by express reference, for special treatment is pre-empted." *Mackey*, 486 U.S. at ——, n. 12, 108 S.Ct. at 2189 n. 12, 100 L.Ed.2d at 849 n. 12; *See Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 47–48, 107 S.Ct. 1549, 1552–1553, 95 L.Ed.2d 39, 107 S.Ct. 1549 (1987); *Metropolitan Life Ins. Co. v. Massachusetts*, 471 U.S. 724, 739, 105 S.Ct. 2380, 2388, 85 L.Ed.2d 728 (1985); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 98, 103 S.Ct. 2890, 2900, 77 L.Ed.2d 490 (1985). Even though this reference is entirely salutary and consistent with the purposes of ERISA, it is nonetheless a reference sufficient to bring Texas' statute within the ambit of *Mackey's* holding. "The pre-emption provision ... displace[s] all state laws that fall within its sphere, even including state laws that are consistent with ERISA's substantive requirement." *Mackey*, 486 U.S. at ——, 108 S.Ct. at 2185, 100 L.Ed.2d at 844, *citing Metropolitan Life Ins. Co. v. Massachusetts, supra*, 471 U.S. at 739, 105 S.Ct. at 2388.

I also reject the contention that Texas' statute is "too tenuous, remote, or peripheral" to trigger pre-emption under Section 514(a) of ERISA. *In re Volpe*, 100 B.R. 840 (Bankr.W.D.Tex.1989); *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490, 501 n. 21 (1985). The Fifth Circuit pointed out that one appropriate predicate for the application of this exception to the broad reach of Section 514(a) is that the state law in question be one of "general application." *Sommers Drug Stores v. Corrigan Enterprises, Inc.*, 793 F.2d 1456, 1467 (5th Cir. 1986). Judge Mahoney, examining the Tex-

as exemption statute, correctly observed that

Section 42.0021 is clearly not a state law of general application. Instead, Section 42.0021 is a state law of specific application designed to regulate in part ERISA plan benefits. It specifically exempts qualified benefit plans from creditor attachment. This is not a state law which exempts many types of property and only indirectly affects qualified benefit plans.

*In re Dyke*, 99 B.R. at 350, 19 BCD at 110. A state statute which by its terms explicitly enters into a field expressly regulated by a provision of ERISA (here, Section 206(d) of ERISA) is simply not a statute which "may affect employee benefit plans in too tenuous, remote or peripheral a manner ..." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 100 n. 21, 103 S.Ct. 2890, 2901 n. 21, 77 L.Ed.2d 490, 503 n. 21 (1985).[4]

B.  *The holding in Mackey is consistent with congressional intent with regard to ERISA.*

When Congress enacted ERISA in 1974, it intended to thoroughly occupy the field of private employee benefit plans, to the exclusion of all state laws and regulations. *See* H.R.Conf.Rep. No. 1280, 93rd Cong., 2d Sess. 383 (1974); D. Gregory, "The Scope of ERISA Preemption of State Law: A Study in Effective Federalism," 48 Pitt LR 427, 449–457 (1987); ERISA § 514(a), *codified at* 29 U.S.C. § 1144(a). ERISA, by definition, governs

Any plan, fund, or program which was heretofore or is hereafter established or maintained by an employer or by an employee organization, or by both, to the extent that by its express terms or as a

---

4.  *Shaw* severely limits the application of the "too tenuous, remote and peripheral" exception, despite its citation to *American Telephone & Telegraph Co. v. Merry*, 592 F.2d 118, 121 (2d Cir.1979), which interpreted the exception expansively. In *Shaw*, at issue was a New York human rights law which generally prohibited employer discrimination in terms, privileges and conditions of employment. The law made no reference to retirement plans, much less to ERISA plans. After acknowledging the existence and continuing validity of the exception (citing *Merry*) the Supreme Court went on to

observe that "the present litigation plainly does *not* present a *borderline* question, and we express no views about where it would be appropriate to draw the line." *Shaw, supra* at 463 U.S. at 101 n. 21, 103 S.Ct. at 2901 n. 21, 77 L.Ed.2d at 503 n. 21. Regardless where the line ends up being drawn, if the New York human rights law at issue in *Shaw* came nowhere near the "borderline," then certainly Texas' explicit exemption for ERISA retirement plans does not present a borderline case warranting resort to the exception.

result of surrounding circumstances such plan, fund, or program—

(i) provides retirement income to employees, or

(ii) results in a deferral of income by employees for periods extending to the termination of covered employment or beyond,

regardless of the method of calculating the contributions made to the plan, the method of calculating the benefits under the plan or the method of distributing benefits from the plan.

ERISA § 3, *codified at* 29 U.S.C. § 1002(2)(A). Any plan falling within this broad definition is *involuntarily* subject to ERISA's regulation. As a result, there are very few private employee pension benefit plans which are *not* governed by ERISA. *See Gavalik v. Continental Can Co.*, 812 F.2d 834, 851 (3rd Cir.), *cert. denied* 484 U.S. 979, 108 S.Ct. 495, 98 L.Ed.2d 492 (1987); *Ferrante v. International Salt Co.*, 687 F.Supp. 309 (E.D.Mich.1988). In a very real sense, Congress has "federalized" the field of private employee pension plans, to nurture their creation and to assure their fairness, in the national interest. ERISA § 2, *codified at* 29 U.S.C. § 1001(a); *Gregory, supra* at 446.

ERISA is primarily and originally a labor statute, whose principal intended beneficiaries are not the employers who may enjoy tax benefits from setting up such plans but employees and their dependents.

29 U.S.C. § 1001; *Gregory, supra* at 443–48. In furtherance of the larger goal of assuring the preservation of benefits so that they will be available at retirement, Part I of ERISA requires that all private employee pension benefit plans contain an anti-alienation provision. "Each pension plan shall provide that benefits provided under the plan may not be assigned or alienated." ERISA § 206(d)(1), *codified at* 29 U.S.C. § 1056(d)(1); *see also* 26 U.S.C. § 401(a)(13); 26 CFR § 1–401(a)(13)–(b)(1) (1982).[5]

The Secretary of Labor is given specific authority to enforce this regulation with both civil and criminal sanctions. 29 U.S.C. §§ 1131, 1132(a)(5).[6] A substantial portion of the enforcement of ERISA (including the enforcement of the requirement that private employee pension benefit plans contain anti-alienation language) has been entrusted to the Secretary of the Treasury. Section 101(a), 1978 Reorganization Plan No. 4, *reprinted at* 29 U.S.C. § 1001, Note: Ancillary Laws and Directives (1982); *see also.* 29 U.S.C. § 1202(c); 26 CFR § 1.401(a)–13(b)(1) (1982).[7] However, if the Commissioner of Internal Revenue determines to disqualify a plan, the Secretary of Labor is afforded 60 days within which to act to compel compliance with ERISA's requirements, via Section 502 of ERISA (29 U.S.C. § 1132). 29 U.S.C. § 1202(a). The tax provisions thus assist the Secretary of Labor in enforcing the provisions of

5. Purpose of ERISA § 206(d) is to "... further insure that the employees' accrued benefits are actually available for retirement purposes ..." HR Rep. No. 807, 93rd Cong., 2d Sess. 68 (1974). The provision seeks to protect pension benefits against the claims of general creditors. HR Rep. No. 1280, 93rd Cong., 2d Sess. 280 (1974), U.S.Code Cong. & Admin.News 1974 pp. 4639, 4670, 5038.

6. (a) A civil action may be brought—

.  .  .  .  .

(5) except as otherwise provided in subsection (b) by the Secretary [of Labor] (A) to enjoin any act or practice which violates any provision of this title, or (B) to obtain other appropriate equitable relief (i) to redress such violation or (ii) to enforce any provision of this title.

29 U.S.C. § 1132(a)(5). The structure of the statute suggests that most of the Secretary's efforts will be devoted to enforcing the reporting

requirements of ERISA. As a practical matter, the loss of tax qualification is usually motivation enough for most plans to include the anti-alienation language. The statute nonetheless *authorizes* enforcement of this inclusion requirement, especially if a beneficiary requests the Secretary exercise the authority and the Secretary determines that "such violation affects, or such enforcement is necessary to protect, claims of participants or beneficiaries to benefits under the plan." 29 U.S.C. § 1132(b)(1)(B).

7. That regulation provides as follows:

(b) No assignment or alienation.—(a) General rule. Under section 401(a)(13), a trust will not be qualified unless the plan of which the trust is a part provides that benefits provided under plan may not be anticipated, assigned (either at law or in equity), alienated or subject to attachment, garnishment, levy, execution or other legal or equitable process.

26 CFR § 1.401(a)–13(b)(1).

ERISA. It is not ultimately a tax purpose which is being served by withholding tax benefits from non-qualifying plans, however. It is a labor purpose. The tax benefit is the carrot. The civil and criminal enforcement mechanisms are the stick. *See* 29 U.S.C. § 1001. *See* 60A Am.Jur.2d, *Pensions and Retirement Funds*, §§ 456, 479 (1988).

Thus, as a matter of both federal policy and federal law, private employee pension plans must contain the prophylactic language dictated by Section 206(d) of ERISA regardless whether it is tax-qualified. Any plan which, by definition, falls within the ambit of ERISA, is also by federal law insulated from the reach of its beneficiaries' creditors. *General Motors Corp. v. Buha*, 623 F.2d 455, 461–63 (6th Cir.1980); *United Metal Products Corp. v. National Bank of Detroit*, 811 F.2d 297 (6th Cir.1987); *In re Graham*, 726 F.2d 1268, 1273 (8th Cir.1984); *Commercial Mortgage, supra; see* discussion *infra* at Part II.A. Because ERISA already regulates the protection of ERISA benefits as part of its overall regulatory scheme, further efforts by states to regulate in this thoroughly federal field must of necessity fail. *Allis–Chalmers Corp. v. Lueck*, 471 U.S. 202, 208, 105 S.Ct. 1904, 1909, 85 L.Ed.2d 206 (1985) (purpose of Congress is the ultimate touchstone); *Alessi v. Raybestos–Manhattan, Inc.*, 451 U.S. 504, 523, 101 S.Ct. 1895, 1906, 68 L.Ed.2d 402 (1981) (pension plan regulation exclusively a federal concern).

C. *Texas' exemption statute for ERISA pension benefit plans impermissibly interferes with the administration of plans and the enforcement of ERISA's provisions with respect to such plans.*

Section 42.0021, albeit inadvertently, also raises the prospect of conflicting or inconsistent state regulation, compelling pre-emption in the face of ERISA's already comprehensive regulatory scheme. *See Fort Halifax Packing Co., Inc. v. Coyne*, 482 U.S. 1, 10–11, 107 S.Ct. 2211, 2216–17, 96 L.Ed.2d 1, 10–11 (1987) ("Pre-emption ensures that the administrative practices of a benefit plan will be governed by only a single set of regulations");[8] *see also* 120 Cong.Rec. H29197 (1974) (remarks of Rep. Dent).

For example, as a state exemption law, Section 42.0021 purports to shelter, under state law, ERISA plan benefits from state-law attachment, execution, or seizure for the satisfaction of *any* debt. *See* Tex. Prop.Code, § 42.001(a). The federal anti-alienation provision, on the other hand, *permits* alienation of benefits to satisfy "qualified domestic relations orders" and directs plan trustees to honor such orders, in the interest of furthering ERISA's overall purpose of protecting the benefits of an employee and his/her dependents. ERISA § 206(d)(3), *codified at* 29 U.S.C. § 1056(d)(3); 26 U.S.C. § 401(a)(13)(B) (1984)). The inconsistency threatens to impose litigation burdens on plan trustees who may be forced to intervene in state collection actions to avert contradictory directives from state and federal tribunals.

Because the Texas statute relies on ERISA for definition of what benefits are protected from creditor collection remedies in this state, ERISA qualification is an element to be established by the debtor claiming the state exemption—or to be attacked by the creditor challenging the claim. The prospect of a state court litigation over plan qualification impermissibly encroaches upon the federal statutory scheme. Under federal law, creditors have no standing to

---

**8.** I note at the outset that the continuing vitality of *Fort Halifax* has been weakened somewhat by the strong holding in *Mackey*. Justice White, whose position carried the day in the majority opinion in *Mackey*, authored the dissenting opinion in *Fort Halifax*. He pointedly noted in his dissent that

> [b]y making pre-emption turn on the existence of an "administrative scheme," the Court creates a loophole in ERISA's pre-emption

statute, 29 U.S.C. § 1144, which will undermine Congress' decision to make employee-benefit plans a matter of exclusive federal regulation.

*Fort Halifax, supra,* 107 S.Ct. at 2223–24 (White, J., dissenting). For an excellent survey and discussion of pre-emption analysis and its handling (or mishandling) in the case law, *see In re Volpe*, 100 B.R. 840 (Bankr.W.D.Tex.1989).

challenge a plan's qualification. Only plan beneficiaries, the employer, the trustee, the Commissioner of the Internal Revenue, and the Pension Benefit Guaranty Board have standing to challenge the tax qualification of a plan. 26 U.S.C. § 7476(b). Furthermore, the proceeding to contest tax qualification must be instituted in U.S. Tax Court, and then only after having exhausted the administrative remedies set out in the Treasury Regulations. *Id.* Texas' law of necessity confers both standing and jurisdiction to litigate these issues in state court, in violation of this exclusive federal scheme.[9]

The spectre of a challenge to a plan's qualification will of necessity compel the prudent plan trustee to intervene in any such action, for if the plan *is* disqualified, the trustee will likely face angry lawsuits from *other* plan beneficiaries whose plan benefits will be placed in jeopardy as a result.[10] Trustees should not have to fear potential liability from this quarter, nor should they have to incur the attendant legal expenses which would be associated with protecting plans from collateral attack as a result of the operation of this statute.[11] Even under the narrower standard for pre-emption set out in *Fort Halifax,* Texas' statute thus falls to Section 514(a) of ERISA.

For all these reasons, this court joins *In re Dyke* and reaffirms its original decision that Texas' Section 42.0021 runs afoul of ERISA and so is unavailable to shelter these plans from the reach of creditors in this bankruptcy proceeding. However, I narrow that holding to apply only to the first sentence of Section 42.0021, and then only to the extent that the statute invokes state law protection for ERISA-qualified plans already protected by Section 206(d).[12]

II. *ERISA-qualified plans are available for exemption under Section 522(b)(2)(A) as exempt under "other federal law".*

■ The debtor and the amicus curae both argued, *inter alia,* that plans subject to ERISA's regulation and which, in compliance therewith, contain the anti-alienation language mandated by ERISA § 206(d)(1) of ERISA, should qualify for exemption under the "other federal law" rubric of Section 522(b)(2)(A) of the Bankruptcy Code. Upon careful review of the ERISA provision, its genesis, and its interpretation, I am inclined to agree. I reach this conclusion in spite of the strong dicta to the contrary in *In re Goff,* 706 F.2d 574 (5th Cir.1983). I first explain how I reach the conclusion that ERISA § 206(d)(1) creates an exemption cognizable under Section

9. Of course a state court might defer to the determination by the Secretary of the Treasury that the plan is qualified, but there is no requirement in the Texas statute that it do so, or that the determination of the Secretary must operate as a conclusive, irrebuttable presumption of qualification. Section 42.0021 is written in terms of Section 401(a) of the Internal Revenue Code, which sets out the requisites for qualification. The statute thus squarely places the state court judge in the shoes of the Commissioner of Internal Revenue.

10. The position of the Service is that, if a particular beneficiary's benefits are determined to be subject to attachment, the entire plan loses its tax-qualification, rendering the plan and its benefits taxable to the other beneficiaries. Private Letter Ruling No. 8910035, CCH Letter Rulings Reports (1988).

11. The infringement threatened by the Texas statute is far more direct than the interference of which the parties complained in *Fort Halifax,* precisely because our statute does more than merely affect ERISA plans. Texas' law is defined in terms of the qualified status of plans

under ERISA, forcing not only reference to ERISA but construction of ERISA *vis-a-vis* particular plans.

12. The court does not have before it the question of Individual Retirement Accounts and other devices which enjoy favorable tax treatment but are not governed by ERISA. If these devices are not governed by ERISA, they are also not subject to the pre-emption scheme of Section 514(a). *See Smith v. Winter Park Software, Inc.,* 504 So.2d 523 (Fla.App.1987); *Vann Rowland v. Strickland,* 294 S.C. 119, 362 S.E.2d 892 (App.1987); *Long Island Jewish Hillside Medical Center v. Prendergast,* 134 Misc.2d 93, 509 N.Y.S.2d 697 (1986). Whether they are otherwise protected by ERISA is not before the court. *See In re Laxson,* 102 B.R. 85 (Bankr.N.D.Tex.1989) (finding the Texas statute sufficient to protect such devices). Church and government plans are already expressly excluded from regulation by ERISA. 29 U.S.C. § 1003(b). Section 514(a) therefore does not pre-empt Section 42.0021 to the extent it extends exemption protection to such plans.

522(b)(2)(A) of the Bankruptcy Code. I then turn to why I depart from *Goff's* "strong dicta."

### A. *ERISA § 206(d)(1) creates an "exemption" under non-bankruptcy law.*

An exemption may be defined as a right given by law to allow a debtor to retain a portion of their personal property free from seizure and sale by their creditors under judicial process. *Clark v. Nirenbaum*, 8 F.2d 451, 452 (5th Cir.1925) *cert. denied* 270 U.S. 649, 46 S.Ct. 349, 70 L.Ed. 780 (1926); *Pickens v. Pickens*, 125 Tex. 410, 83 S.W.2d 951, 954 (1935). Its grant or withdrawal is totally dependent on the will of the state, and is normally enacted on grounds of public policy for a humane or generous purpose. *See generally* 31 Am. Jur.2d, *Exemptions* § 1 at p. 329 (1967); Black's Law Dictionary ("privilege allowed by law to a judgment debtor, by which he may hold property to a certain amount or certain classes of property, free from all liability to levy and sale on execution or attachment").[13]

By virtue of ERISA § 514(a) (the preemption provision), ERISA § 206(d)(1) (the provision which compels private employee pension plans to incorporate language insulating their benefits from involuntary attachment), has been held by most courts to override the operation of state law collection statutes. *General Motors Corp. v. Buha*, 623 F.2d 455, 461–63 (6th Cir.1980); *Commercial Mortgage Ins. Inc. v. Citizens National Bank of Dallas*, 526 F.Supp. 510, 518–519 (N.D.Tex.1981); *see also United Metal Products Corp. v. National Bank of Detroit*, 811 F.2d 297 (6th Cir.1987); *In re Graham*, 726 F.2d 1268, 1273 (8th Cir.1984);[14] *Vink v. SHV North America Holding Corp.*, 549 F.Supp. 268 (S.D.N.Y.1982); *Northwest Airlines, Inc. v. Roemer*, 603 F.Supp. 7 (D.Minn.1984); *Crausman v. Curtis–Wright Corp.*, 676 F.Supp. 1302 (D.N.J.1988); *Cody v. Riecker*, 454 F.Supp. 22 (E.D.N.Y.1978), *aff'd* 594 F.2d 314 (2d Cir.1979); *Ball v. Revised Retirement Plan*, 522 F.Supp. 718 (D.Colo.1981); *see also Citizens Bank of Ashburn v. Shingler*, 173 Ga.App. 511, 326 S.E.2d 861 (1985); *Christ Hospital v. Greenwald*, 82 Ill.App.3d 1024, 38 Ill.Dec. 469, 403 N.E.2d 700 (1980); *Biles v. Biles*, 163 N.J.Super. 49, 394 A.2d 153 (1978); *Ward v. Ward*, 164 N.J.Super. 354, 396 A.2d 365 (1978); *Helmsley–Spear, Inc. v. Winter*, 74 App. Div.2d 195, 426 N.Y.S.2d 778 (1980), *aff'd* 52 N.Y.2d 984, 438 N.Y.S.2d 79, 419 N.E.2d 1078 (1981); *but see St. Paul Fire & Marine Ins. Co. v. Cox*, 752 F.2d 550 (11th Cir.1985); *Guidry v. Nat. Sheet Metal Workers' Nat. Pension Fund*, 641 F.Supp. 360 (D.Colo.1986); *National Bank of North America v. International Brotherhood of Electrical Workers, Local No. 3*, 69 App.Div.2d 679, 419 N.Y.S.2d 127, *appeal dism'd*, 48 N.Y.2d 752, 422 N.Y.S.2d 666, 397 N.E.2d 1333 (1979); *Cogollos v. Cogollos*, 93 Misc.2d 406, 402 N.Y.S.2d 929 (1978).[15] A body of federal common law has thus developed around ERISA, clarifying that ERISA § 206(d) effectively oper-

---

13. In many states property is exempt *either* because it is on a list of exempt property *or* because it is deemed inalienable. For example, in New York the assignment or transfer of a claim for personal injury is prohibited, N.Y.Gen.Obligation Law § 13–101, and under C.P.L.R. § 5201(b), a "money judgment may be enforced against any property which could be assigned or transferred ... unless it is exempt from application to the satisfaction of the judgment." Courts have had no problem in seeing claims for personal injury in New York as exempt under § 522(b). See *In re Murcelli [Mucelli]*, 21 Bankr. 601 (Bankr.S.D. N.Y.1982)....

T. Jackson, *The Logic and Limits of Bankruptcy Law*, "The Scope of Discharge" p. 263 n. 26 (Harvard Univ.Press 1986).

14. The court concurred, however, with *Goff's* strong dicta that the exemption from state law collection would not be effective as an exemption for bankruptcy purposes under Section 522(b)(2)(A). *Id.; cf. In re Hinshaw*, 23 Bankr. 233 (Bankr.D.Kan.1982) (ERISA-qualified retirement trust held exempt under Section 522(b)(2)(A)).

15. The few cases to the contrary have for the most part done so in order to carve out an exception for spousal support obligations. Congress has since amended ERISA to expressly recognize that exception. 29 U.S.C. § 1056(d)(3), as amended August 23, 1984, P.L. 98–397, Title I, § 104(a), 98 Stat. 1433.

ates as an exemption for covered plan benefits.

Most recently, the Supreme Court in *Mackey* observed that Congress adopted ERISA § 206(d)(1) precisely because otherwise "ERISA plan benefits could be attached and/or garnished." *Mackey,* 486 U.S. at ——, 108 S.Ct. at 2189, 100 L.Ed.2d at 849. Added the Court:

> Where Congress intended ERISA to preclude a particular method of state-law enforcement of judgments, or extend anti-alienation protection to a particular type of ERISA plan, *it did so expressly in the statute.* Specifically, ERISA § 206(d)(1) bars the alienation or assignment of benefits provided for by ERISA *pension* benefit plans.... *by adopting § 206(d)(1), Congress demonstrated that it could, where it wished to, stay the operation of state law* as it affects only benefits and not plans.... when Congress was adopting ERISA, it had before it a provision to bar the alienation or garnishment of ERISA plan benefits, and chose to impose that limitation only with respect to ERISA pension benefit plans.

*Id.* 486 U.S. at ——, ——, 108 S.Ct. at 2188, 2189, 100 L.Ed.2d at 848, 849 (emphasis added and in original). The *Mackey* Court does not shrink from characterizing ERISA § 206(d) as, functionally, a federal exemption.[16]

Of particular importance to us in this jurisdiction is that the Northern District of Texas expressly held that the anti-alienation provision of ERISA pre-empted this state's garnishment laws as applied to qualified plans. *Commercial Mortgage*

*Ins. Inc. v. Citizens Nat. Bank,* 526 F.Supp. 510, 518–20 (N.D.Tex.1981); *see Calhoun v. FDIC,* 653 F.Supp. 1288 (N.D. Tex.1987) (only Section 1144(d) prevents ERISA from protecting benefits from the reach of the FDIC's garnishment pursuant to federal statute); *see also Citizens Bank of Ashburn v. Shingler,* 173 Ga.App. 511, 326 S.E.2d 861 (1985) (ERISA protects plan benefits from creditors in a nonbankruptcy context). *Commercial Mortgage* was before the Fifth Circuit in *Goff* and, though discussed, was not overruled. The *Commercial Mortgage* court correctly recognized that ERISA § 206(d)(1) successfully insulated qualified plans from state law garnishment.[17] This protection amounts to an exemption under nonbankruptcy law.

It is critical to understand that it is *not* states' spend-thrift trust laws which *ultimately* shelter ERISA-regulated plan benefits from execution or levy, though many such plans may also enjoy protection under those laws. *Compare In re Ewald,* 73 B.R. 792 (Bankr.W.D.Tex.1987) *with In re Connally,* 94 B.R. 908, 18 BCD 1129 (Bankr.W.D.Tex.1989); Tex.Prop.Code § 112.035(b). Congress could not have achieved the national uniformity which motivated ERISA's broad pre-emption of state law if the efficacy of anti-alienation turned on the vagaries of state spendthrift trust law. *See* HR Rep No 1785, 94th Cong, 2nd Sess 47 (1977) ("the Federal interest and the need for national uniformity are so great that enforcement of state regulation should be precluded"); Menzel, "Corporate Pension Plans as Part of the Bankruptcy Estate," 69 Minn.L.R. 1113, 1118 (1985).[18]

---

**16.** The purpose of ERISA is consistent with the general purpose of exemptions to assure that debtors will not become public charges and their families will not be deprived by the extravagance or misfortune of their breadwinners. *See generally* 31 Am.Jur.2d, *Exemptions* § 3 (1967) and cases cited therein. ERISA's

> most important purpose will be to assure American workers that they may look forward with anticipation to a retirement with financial security and dignity, and without fear that this period will be lacking in the necessities to sustain them as human beings within our society.

HR Rep. No. 533, 93rd Cong, 1st Sess 8 (1973) U.S.Code Cong. & Admin.News 1974, p. 4639.

**17.** The court noted that it was indeed the statute, and not merely the plan provision, which operated to override state garnishment law.

**18.** Spendthrift trust law serves a different purpose than does ERISA:

> ERISA authorizes a whole host of employee pension plans, which may be established by employer, employee, or both, may consist of contributions from employer, employee, or both, and will in any event be protected from creditors' actions in state court by virtue of the statutorily mandated antialienation provisions of the plans themselves. The simplistic division between settlor and beneficiary in the traditional doctrine of spendthrift trusts lends

**808**

Instead, it is the fact that the anti-alienation language is mandated by the federal regulation of private employee pension benefit plans that renders those plans exempt from state law creditor remedies. *Commercial Mortgage Ins. Inc. v. Citizens Nat. Bank*, 526 F.Supp. 510, 518–19 (N.D. Tex.1981); *Mackey, supra*, 486 U.S. at ——, 108 S.Ct. at 2189, 100 L.Ed.2d at 848–49; *see* 29 U.S.C. §§ 1131, 1132 (powers of civil and criminal enforcement resides in Secretary of Labor); *see also* discussion *supra* at Part I.B. What is more, the Treasury Regulations strongly support such an interpretation. ERISA plans which comply with Section 401(a)(13) of Title 26 (the Internal Revenue Code enactment of ERISA § 206(d)(1)) are immune from creditor attachment without further resort to whether the plans also qualify for protection under state spendthrift trust law. *See* 26 CFR § 1.401(a)–13(b)(1) (1982).[19] *Commercial Mortgage, supra* at 520 (N.D.Tex.1981).

Section 206(d)(1) has been held by numerous federal courts to insulate retirement benefits from liability to state law levy or attachment, and thus functions as a privilege created by law sheltering certain property from creditor attachment—in short, an exemption created by federal law. Section 206(d) thus creates a federal exemption properly cognizable in bankruptcy, under the "other federal law" rubric of Section

522(b)(2)(A).[20] The principal impediment to such a holding, however, is the "strong dicta" in *Goff* to the contrary. *In re Goff*, 706 F.2d 574 (5th Cir.1983).[21]

**B. *Goff's* conclusion that ERISA plans are not eligible for exemption under the "other federal law" rubric of Section 522(b)(2)(A) is incorrect.**

*Goff* concludes that ERISA plans do not qualify for exemption under 522(b)(2)(A) by assuming that "the contingent nature of ERISA's restraints on alienation differs markedly from the absolute prohibitions contained in the listed statutes [in the legislative history]." *Id.* at 585. The court adds that the antialienation requirement

is not an exemption from creditors' process provided by federal law.... ERISA's anti-assignment and alienation provisions are different in kind from those contained in the statutes listed in the Code's legislative history ... ERISA merely provides that as a condition of obtaining qualified status—with its attendant tax and other benefits—a pension plan must preclude alienation or assignment of its benefits. It does not prohibit pension funds from permitting alienation or assignment; rather, while it encourages and favors qualified plans, it envisions that "disqualified" plans may be formed which are still subject to

---

no aid in determining whether ERISA plans should be protected ...

Comment, "Contra *Goff:* Of Retirement Trusts and Bankruptcy Code § 541(c)(2)," 32 U.C.L.A. L.Rev. 1266, 1274 (1985).

**19.** The Supreme Court has noted the deference to be given regulations when Congress delegates to an agency power to prescribe standards for interpreting statutes:

Congress entrusts to the Secretary, rather than to the Courts, the primary responsibility for interpreting the statutory term.... The regulation at issue in this case is therefore entitled to more than mere deference or weight. It can be set aside only if the Secretary exceeded his statutory authority or if the regulation is "arbitrary, capricious or an abuse of discretion or otherwise not in accordance with law".

*Batterton v. Francis*, 432 U.S. 416, 425, 97 S.Ct. 2399, 2405, 53 L.Ed.2d 448, 456 (1977) (foot-

notes and citations omitted) (Social Security regulations); *cf.* 29 U.S.C. §§ 1201, 1202, 1203(b), 1204(a) (delegation provisions).

**20.** Section 522(b)(2)(A), derived from Section 6 of the Bankruptcy Act, directs a bankruptcy court to, in effect, honor existing exemptions with neutrality from the bankruptcy vantage. Nonbankruptcy law controls the nature and extent of any given exemption, even though it is the bankruptcy court which is called on to *apply* that law. For a more detailed discussion of these concepts, see the discussion *infra* at Part II.B.2.b.

**21.** Other circuits which have followed *Goff's* dicta on this point have simply repeated *Goff's* analysis, adding no significant additional arguments for the proposition. *See In re Graham*, 726 F.2d 1268, 1274 (8th Cir.1984); *In re Lichstrahl*, 750 F.2d 1488, 1491 (11th Cir.1985); *In re Daniel*, 771 F.2d 1352, 1360 (9th Cir.1985).

ERISA's regulatory scheme but which do not restrict alienation or assignment. *Id.* at 583 and 585. I cannot agree with this analysis, for a number of reasons. First, I believe *Goff* is simply mistaken in its contention that the only function of the anti-alienation language is to qualify plans for favorable tax treatment. Second, I believe *Goff* misunderstands the structure and purpose of the Bankruptcy Code and has found a "congressional policy" antithetical to the retention of retirement benefits where precisely the opposite policy is indicated. Thirdly, I disagree with *Goff's* treating the legislative history to Section 522(b)(2)(A) as though that history had in fact been enacted. Finally, I believe *Goff's* presumption that the Bankruptcy Code has, in effect, implicitly repealed ERISA's anti-alienation provisions does not square with the rules of statutory construction that regulate such a finding.

1. *Anti-alienation—it's not just for tax qualification*

Although the presence of anti-alienation language in retirement plans is indeed a condition for their tax-qualification, ERISA § 206(d)(1) requires the language to be included in *any* plan which fits the definition of "employee pension benefit plan" found in 11 U.S.C. § 1001, regardless of whether it seeks tax qualification. 29 U.S.C. § 1056(d). The Employee Benefit Committee of the State Bar of Texas correctly notes in its brief that

ERISA Section 501 [29 USC § 1131] imposes criminal liability for any person who willfully violates Part 1 of ERISA (where ERISA Section 206(d)(1) is found); and ERISA Section 502 [29 USC § 1132(a)] imposes civil liability. It is true that it is possible for tax purposes to have pension plans that are not "qualified" plans in the sense of the loss of certain tax benefits that are available to "qualified plans"; but if the nonqualified pension plan is subject to ERISA, it must contain all provisions mandated by ERISA. It is hard to imagine a circumstance where an employer would willfully expose itself to the criminal sanctions imposed by ERISA by refusing to insert the antialienation/anti-assignment language mandated by ERISA Section 206(d)(1).

Amicus Brief, Employee Benefit Committee, pages 4–5; *see* discussion *supra* at Part I.B.; *but see In re Dyke,* 99 B.R. 343, 347, 19 BCD 105, 108 (Bankr.S.D.Tex.1989). More is at stake than mere loss of tax benefits, for ERISA is first of all a *labor* statute which seeks to regulate nearly all private employee pension benefit plans, whether they want to be regulated or not. ERISA is an *involuntarily* statute. *See* 29 U.S.C. § 1002(2)(A). Part I of ERISA's regulatory scheme in turn requires antialienation language to be included in all such plans, and subjects employers and plan administrators to civil or criminal penalties for failure to comply with any of the requirements of Part I of ERISA. 29 U.S.C. §§ 1131, 1132(a)(5). *See* note 6 *supra,* and discussion at Part I.B.

*Goff* is incorrect, therefore, when it states that the anti-alienation language required by ERISA § 206(d)(1) serves only a tax purpose. Certainly the tax provisions are the "carrot" which induces voluntary compliance with ERISA's labor regulations. The threat of loss of tax benefits is an effective *means* to enforce the equitable requirements imposed by Part I of ERISA. But it is just that—the means, not the end.

2. *The structure of the Bankruptcy Code indicates a strong congressional policy favoring a debtor's fresh start and honoring existing exemption schemes.*

The Fifth Circuit contends in *Goff* that the Bankruptcy Code was, generally, *intended to broaden the "property of the estate" available to creditors in bankruptcy and, specifically, intended to limit any exemption of pension funds.* These policies based upon provisions of the Code would be frustrated were ERISA's antialienation and assignment provisions applied with a sweeping brush.

*In re Goff,* 706 F.2d at 587 (emphasis added). The structure and development of the applicable provisions of the Bankruptcy Code belie this conclusion. *Goff* has im-

properly elided the two concepts "property of the estate" and "exemptions," assuming that an intention to bring as much property as possible *into* the estate must also be mirrored by an intention to limit the exempt property which can be removed *from* the estate. Actually, Sections 541 and 522 serve two very discrete purposes which can and do co-exist very comfortably without conflict. To see this more clearly, one need only revisit how the two provisions came about.

### a. Property of the estate—the reasons for the changes wrought by Section 541.

In 1978, Congress undertook a comprehensive revision of the bankruptcy laws. Under the Bankruptcy Act of 1898, the concept of property of the estate was largely governed by melange of references to state law principles, leading to unevenness, delay, confusion and forum-shopping. *See* Report of the Commission on the Bankruptcy Laws of the United States, HR Doc. 137, 93rd Cong., 1st Sess. 16–17 (1973); § 70, Bankruptcy Act of 1898, *codified at* 11 U.S.C. (repealed) § 110(a) (1976). Property of the estate under the Act did *not* include exempt property. *Segal v. Rochelle*, 382 U.S. 375, 379, 86 S.Ct. 511, 514, 15 L.Ed.2d 428 (1966); *Lines v. Frederick*, 400 U.S. 18, 19–20, 91 S.Ct. 113, 113–114, 27 L.Ed.2d 124 (1970).

In Section 541 of the Bankruptcy Code, Congress departed from the Act's formalistic, uneven approach and instead gave the broadest possible sweep to the definition of what property would be governed by the bankruptcy process. The purpose of this new approach was to empower the newly-created bankruptcy courts with the broadest possible jurisdictional grant, contributing to prompt and complete adjudication of rights within a single forum, with a minimum of delay and uncertainty occasioned by questions of jurisdiction and state property law questions. HR Rep. No. 595, 95th Cong., 1st Sess. 176, 368 (1977) U.S.Code

Cong. & Admin.News 1978, pp. 5787, 6136, 6323; *First National Bank of Louisville v. Hurricane Elkhorn Coal Corp. II (In re Hurricane Elkhorn Coal Corp. II)*, 19 B.R. 609, 8 BCD 1243, 1246 (Bankr.W.D. Ky.1982), *aff'd* 32 B.R. 737 (W.D.Ky.1983), *aff'd* 763 F.2d 188 (6th Cir.1985) (significant change made by Code has reduced reliance on state law in determining what is estate property); *Firestone v. Metropolitan Life Ins. Co. (In re Di Piazza)*, 29 B.R. 916, 918 (Bankr.N.D.Ill.1983). Congress also expressly divorced the exemption issue from the "property of the estate" question, a clear departure from the practice under the Bankruptcy Act. *See* HR Rep. No. 595, 95th Cong., 1st Sess. 368 (1977) (Section 541 has the effect of overruling *Lines v. Frederick*). Thus, exempt property would, under the new Code, be subject to administration by the estate (and by the bankruptcy court). *Joelson v. Tiffin Sav. Bank (In re Everhart)*, 11 B.R. 770, 774 (Bankr.N.D. Ohio 1981).

The *raison d'etre* for this rewrite was not, as *Goff* supposed, to enlarge the pool of assets available for creditors, nor was there any particular intention to *restrict* what debtors could keep. The Code leaves that latter issue for resolution in Section 522, the exemption statute. All that Congress intended to achieve in Section 541 was (1) national uniformity and (2) broad jurisdiction (consistent with the expanded powers conferred on the bankruptcy court by the new Code).

By departing from a scheme which had so heavily relied on state law to define estate property, Congress did not intend in the process to amend prior law which excluded from the estate legitimate spendthrift trust benefits. With the Code's more expansive definition of estate property, Congress had to *add* a provision affirming that the Code would continue to honor state spendthrift trust law, as had the Bankruptcy Act.[22] HR Rep. No. 595, 95th

---

22. Under Section 70 the trustee succeeded to the "title of the bankrupt as of the date of the filing of the petition" as well as to "property ... which prior to the filing ... could by any means have been transferred or which might have been lev-

ied upon and sold under judicial process ..." § 70(a), Bankruptcy Act, *codified at* 11 U.S.C. (repealed) § 70 (1976). As a result, property governed by a valid restriction on alienation did not become property of the estate under the Act,

Cong., 1st Sess. 369 (1977); 11 U.S.C. § 541(c)(2) (restrictions on the transfer of a beneficial interest of the debtor in a trust enforceable under applicable nonbankruptcy law are also enforceable in bankruptcy). The narrow scope of this exception is consistent with the broad sweep of Section 541 generally. Section 541(c)(2), far from expressing any particularly new congressional policy (as suggested in *Goff*), simply ratified long-standing prior law honoring state spendthrift trust law. Nothing more need be read into its enactment. HR Rep. No. 595, 95th Cong., 1st Sess. 176 (1977).

### b. Exemptions—the distinctly different function of Section 522.

Section 522 of the Code, the exemption provision, serves a different, equally important, but entirely distinct policy, that of affording the individual debtor emerging from bankruptcy a "fresh start." 11 U.S.C. § 522; HR Rep. No. 595, 95th Cong., 1st Sess. 126 (1977); *see In re Hahn*, 5 B.R. 242, 244 (Bankr.S.D.Ia.1980). In crafting Section 522, Congress carried forward the basic exemption scheme set out in Section 6 of the Bankruptcy Act, which honored whatever exemptions a debtor was entitled to outside of bankruptcy, then added an alternative set of "generic exemptions." 11 U.S.C. § 522(b).

### (1) The history of the "existing exemptions" scheme in § 522(b)(2)(A).

Section 6 of the Act had permitted debtors to take advantage of all the exemptions available under both (1) the laws of the United States and (2) the laws of the state in which the debtor filed. Section 6, Bankruptcy Act of 1898 (11 U.S.C. (repealed) § 24).[23] The Act itself neither added to nor detracted from those "existing exemptions."

Report of the Commission on the Bankruptcy Laws of the United States, HR Doc. No. 137, 93rd Cong., 1st Sess. 16 (1973). This provision was reenacted in the Bankruptcy Code as Section 522(b)(2)(A), substantially without change. HR Rep. No. 595, 95th Cong., 1st Sess. 126, 360 (1977); 11 U.S.C. § 522(b)(2)(A).[24] Thus, Section 522(b)(2)(A), as had Section 6 of the Bankruptcy Act, also *honors* existing exemption law in bankruptcy.

It has long been the policy of Congress in its bankruptcy laws to recognize and give effect to state exemption laws. 1A *Collier on Bankruptcy* ¶ 6.18 (14th ed., rel. no. 14, 1972); *In re Freidrich*, 100 Fed. 284, 286 (7th Cir.1900) (bankruptcy court adopts state law rules of decision as to the extent and nature of exemptions, reserving to itself only the procedure by which the exemption is claimed). That policy did not change when, in 1938, Congress added to Section 6 the language permitting debtors to claim exemptions arising under federal law as well. *Collier, supra* at ¶ 6.17 (rel. no. 19, 1974). *Collier*'s specifically notes that

> It is not the intent of § 6 to state a federal exemption but only to incorporate those created by various federal statutes.

so there was no need for a provision expressly honoring restrictions on alienation (such as the one now found in Section 541(c)(2) of the Bankruptcy Code).

**23.** The statute read as follows:

This Act shall not affect the allowance to bankrupts of the exemptions which are prescribed by the laws of the United States or by the State laws in force at the time of the filing of the petition in the State wherein they have had their domicile for the six months immediately preceding the filing of the petition ... § 6, Bankruptcy Act of 1898, *codified at* 11 U.S.C. (repealed) § 24 (1976).

**24.** The pertinent portions of the statute, which track Section Six of the Act nearly *verbatim*, reads as follows:

Notwithstanding section 541 of this title [defining property of the estate], an individual debtor may exempt from property of the estate the property listed in either paragraph (1) or, alternatively, paragraph (2) of this subsection.... Such property is—

· · · ·

(2)(A) Any property that is exempt under Federal law, ... or State or local law that is applicable on the date of the filing of the petition at the place in which the debtor's domicile has been located ...

11 U.S.C. § 522(b)(2)(A).

These statutes control as to the nature and extent of the exemption.

*Id.* at p. 900.

■ Any intention on the part of Congress to violate or abolish this wise and uniform rule, observed from the creation of the federal system, should be made to appear by clear and unmistakable language, and should not be presumed from a doubtful or ambiguous provision fairly susceptible of any other construction. *Holden v. Stratton,* 198 U.S. 202, 213, 25 S.Ct. 656, 659, 49 L.Ed. 1018, 1022 (1905); 31 Am. Jur.2d, *Exemptions* § 11 (1967). When a subsequent enactment reenacts prior law, the rule of statutory construction is that the new enactment is presumed to have continued the interpretation given the prior law absent the most compelling evidence to the contrary. *Communications Workers of America v. Beck,* — U.S. —, —, 108 S.Ct. 2641, 2649, 101 L.Ed.2d 634, 647 (1988); *Pott v. Arthur,* 104 U.S. 735, 736, 26 L.Ed. 909, 910 (1882). Section 522(b)(2)(A) must be interpreted as was its predecessor, Section 6 of the Act, to be *neutral* with respect to the nature and extent of exemptions arising under other federal laws, regardless of their source or purpose.[25]

### (2) The genesis of the "generic exemptions" scheme codified at § 522(d).

Congress recognized that the exemption scheme of many states (upon which most debtors would have to rely to protect such things as house, car, clothes, furniture and the like) had become, over the years, unnecessarily parsimonious:

[S]ome State exemption laws have not been revised in this century. Most are outmoded, designed for more rural times, and hopelessly inadequate to serve the needs of and provide a fresh start for modern urban debtors. The historical purpose of these exemption laws has been to protect a debtor from his creditors, to provide him with the basic necessities of life so that even if his creditors levy on all of his nonexempt property, the debtor will not be left destitute and a public charge. The purpose has not changed, but neither have the level of exemptions in many States. Thus, the purpose has largely been defeated ... [The Bankruptcy Code] adopts the position that *there is a Federal interest in seeing that a debtor that goes through bankruptcy comes out with adequate possessions to begin his fresh start.*

HR Rep. No. 595, 95th Cong., 1st Sess. 126 (1977) U.S.Code Cong. & Admin.News 1978, p. 6087 (emphasis added).[26] In response to a recommendation by the Commission on the Bankruptcy Laws of the United States, Congress enacted a set of "generic exemptions," available as an alternative to those debtors unfortunate enough to live in those parsimonious jurisdictions. These generic exemptions are derived in considerable part from the Uniform Exemptions Act, drafted and adopted by the National Conference of Commissioners on Uniform State Laws in 1976. *See* Uniform Exemptions Act, Prefatory Note, *reprinted at* 13 U.L.A., Civil Procedural and Remedial Laws, p. 207 (West 1986) (hereinafter "Uniform Exemptions Act"). 11 U.S.C. § 522(b)(1), (d).

In giving debtors a choice of exemption schemes ("existing" or "generic"), Congress certainly did not intend to put debtors to a Hobson's choice. The generic exemptions alternative represents a complete,

---

**25.** Nothing in the legislative history or the statutory language of 11 USC § 522 indicates any federal dependency on the substantive content of state exemption laws. The only legislative attitude towards state exemption laws which can be gleaned from Section 522 is one of strict neutrality.

*In re Dyke,* 99 B.R. 343, 351, 19 BCD 105, 111 (Bankr.S.D.Tex.1989).

**26.** Students who have examined the exemptions laws of the several states are always astounded by the enormous disparity that characterizes these laws ... If the original objectives of state exemption legislation remain operative, the time for overhaul in the light of the needs of those living in this last quarter of twentieth century has long since arrived.

Uniform Exemptions Act, Prefatory Note *reprinted in* 13 ULA, Civil Procedural and Remedial Laws (West 1986); *see also* B. Weintraub & A. Resnick, *Bankruptcy Law Manual,* ¶ 4.07[1][b] at p. 4–34 (Revised ed. 1986).

free-standing exemption scheme, which provides not only for such things as cars, clothes and homestead (otherwise governed by state exemption law) but also for retirement benefits. 11 U.S.C. § 522(d)(10)(E); [27] *see* Uniform Exemptions Act, § 6(a)(5) (nearly the same wording as that found in Section 522(d)(10)(E) of the Bankruptcy Code). After all, debtors who might choose the generic exemptions must *forego* the existing exemptions, including those for retirement benefits available under "other federal law." [28] Debtors should not be penalized for making that choice, nor does anything in the statute or the legislative history suggest otherwise.

*(3) Congress expressed no particular intent to limit debtors' access to retirement benefits in the exemption statute.*

The overall structure of Section 522(b) manifests a congressional policy which generally *favors* debtors retaining their retirement benefits. The legislative history is effusive in according sufficient property to debtors for their fresh start, with nary a hint of an intent to penalize debtors for choosing one exemption scheme over the other. Moreover, the history of the enactment of Section 541(c)(2) demonstrates it to be a continuation of prior law largely unrelated to retirement benefits, contrary to *Goff's* contentions. Finally, and most persuasively, the substantial reenactment of Section 6 of the Act in Section 522(b)(2)(A) indicates that Congress there also intended to continue prior law, which simply incorporated by reference such federal exemptions as might otherwise be available to the debtor absent bankruptcy. Under prior law, those statutes controlled the nature and extent of the exemption. The same rule of construction should also apply to Section 522(b)(2)(A).

As Section 522(b)(2)(A) contemplates honoring existing exemptions available under "other federal law," the holding in *Commercial Mortgage*, representing as it does a statement of federal common law construing ERISA § 206(d)(1) as effectively an exemption, compels this court to honor as exempt the benefits accruing from ERISA-regulated plans which are in compliance with ERISA § 206(d)(1).

3. *The "illustrative list" in the legislative history to Section 522(b)(2)(A) is not sufficient authority to support either an amendment of the Bankruptcy Code's exemption statute or an implicit repeal of ERISA's anti-alienation provision.*

*Goff* contends that the illustrative list found in the legislative history to Section 522(b)(2)(A) betrays an effort by Congress to amend or delimit access to the "other federal law" exemptions available under the "existing exemptions" scheme. While *Goff* does not go so far as to hold that ERISA § 206(d)(1) does not operate as an exemption from attachment or execution, the court does argue that it functions in that fashion only in the nonbankruptcy context. *Matter of Goff,* 706 F.2d at 585. I respectfully disagree.

*a. No intention to change prior law.*

First, as discussed above, Section 6 of the Bankruptcy Act (from which this section of the Code was taken) deferred to non-bankruptcy exemption statutes with respect to the nature and extent of the exemptions a debtor could claim upon bankruptcy. Nothing in that section even vaguely suggested an intention to modify

---

**27.** The exemption for retirement benefits under the generic scheme is available only if the benefits are "reasonably necessary for the support of the debtor and dependents of the debtor," a limitation not found in ERISA. 11 U.S.C. § 522(d)(10)(E); *see* 29 U.S.C. §§ 1056(d)(1), 1144(d). This overlay does not affect the interpretation of existing exemptions, which have a source independent of the generic exemptions. Debtors cannot keep more than $7,500 equity in their residence under the federal scheme either, but that hardly affects how bankruptcy courts construe a Texas homestead exemption claimed under the existing exemptions scheme.

**28.** For example, a resident of the District of Columbia, employed in a civil service job, would not have to give up his or her civil service retirement system benefits, no matter which exemption scheme he or she chose. Under the existing exemption scheme, they are exempt under "other federal law" (5 U.S.C. § 8346(a)). Under the generic exemptions, they are protected by Section 522(d)(10)(E).

or limit the scope or operation of a given exemption in the bankruptcy context. Had Congress intended to depart from prior law, it would have had to have done so by choosing explicit *statutory* language. It is dangerous to rely upon illustrative lists in the legislative history to *add* such a limitation to the statute. *Piper v. Chris–Craft Industries, Inc.*, 430 U.S. 1, 26, 97 S.Ct. 926, 941, 51 L.Ed.2d 124, 143 (1977); *Scripps–Howard Radio v. FCC*, 316 U.S. 4, 11, 62 S.Ct. 875, 880, 86 L.Ed. 1229, 1235 (1942).[29]

*b.  The "existing exemptions" scheme is neutral with regard to the underlying laws honored.*

Second, *Goff's* suggestion departs from the clearly expressed intention of Congress that the Code be *neutral* with regard to the existing exemptions" scheme. Section 522(b)(2)(A) continues that policy of *honoring*, with neutrality, existing exemption schemes. *Cf. In re Dyke*, 99 B.R. 343, 350, 19 BCD 105, 110 (Bankr.S.D.Tex.1989) ("the only legislative attitude toward state exemption laws which can be gleaned from Section 522 is one of strict neutrality"). *Goff* suggests that the Code is *not* neutral with regard to exemptions, that Congress has somehow *federalized* and then modified the scope and reach of exemptions otherwise available under the laws of the United States. That suggestion is simply not consistent with the clear and unambiguous language of the statute, nor does it square with the prior law from which Section 522(b)(2)(A) is drawn.[30] Absent resort to the legislative history (discussed below), there is no basis for *Goff's* departure from the rule of neutrality which has governed the bankruptcy exemption statute for nearly a century.

*c.  Legislative history may not be used to amend statutory enactments.*

Third, *Goff* breaks a cardinal rule of statutory construction when it relies so heavily on the listing in the legislative history to support its conclusion that Congress did not intend to include ERISA plans under the "other federal law" rubric. Looking at the House and Senate reports, *Goff* concluded that "[t]he failure of Congress to include ERISA in its listing of illustrative federal statutes is highly probative of congressional intent." *In re Goff*, 706 F.2d at 585. Where the meaning of a statute is clear on its face, however, it is improper to resort to legislative history to interpret the statute. *Diamond v. Chakrabarty*, 447 U.S. 303, 315, 100 S.Ct. 2204, 2210, 65 L.Ed.2d 144, 154 (1980); *United Air Lines, Inc. v. McMann*, 434 U.S. 192, 199, 98 S.Ct. 444, 448, 54 L.Ed.2d 402, 410 (1977); *United States v. McKesson & Robbins, Inc.*, 351 U.S. 305, 315, 76 S.Ct. 937, 943, 100 L.Ed. 1209, 1217 (1956). The plain meaning of a statute cannot be overcome by legislative history which, "through strained processes of deduction from events of wholly ambiguous significance, may furnish dubious bases for inference in every direction." *Ex parte Collett*, 337 U.S. 55, 61, 69 S.Ct. 944, 947, 93 L.Ed. 1207, 1211 (1949), *citing Gemsco v. Walling*, 324 U.S. 244, 260, 65 S.Ct. 605, 614, 89 L.Ed. 921, 933 (1945). To paraphrase *Goff*, had Congress intended to exclude ERISA-regulated plans from the "other federal law" rubric, it would certainly have done so in the Bankruptcy Code itself. *Goff* concedes that Section 522(b)(2)(A)'s legislative history is sparse and that it provides "no further insight into which other, if any, federal laws were intended to be brought within this provision." *Id.* at 583. As *Goff's* interpretation derives from its heavy reliance on the illustrative list in the legislative history, its logic must be rejected in the face of the statute, which is clear and unambiguous on its face.

*d.  The failure to include an item in an "illustrative list" is not probative.*

Fourth, if resort *is* to be made to the legislative history, then interpretation of

---

**29.**  "We must be wary against interpolating our notions of policy in the interstices of legislative provisions." *Id.* (Frankfurter, J.).

**30.**  The Fifth Circuit has never suggested adopting a similar rule of interpretation for state exemptions claimed under Section 522(b)(2)(A).

If anything, that court has shrunk from such an approach when it has been called upon to construe state exemption law in the context of bankruptcy. *See In re Niland*, 825 F.2d 801, 807–11 (5th Cir.1987).

that history must be disciplined. It is a non-sequitur to say that the *failure* to *include* something on an *illustrative* list is probative of an intent to exclude it from that list. Illustrative lists (in contrast to exhaustive lists) by their nature preclude the possibility of "overlooking" a statute of the type already listed. *Goff* doubted that Congress meant to include ERISA when other "significantly less comprehensive and less well known statutes" were included in the list, *Id.* at 585, but that observation simply misses the point. The statute has long adopted an attitude of *neutrality* toward the nature and extent of a given exemption, leaving that issue to be controlled by the statute which confers the exemption and the case law which construes it. 1A *Collier on Bankruptcy* ¶ 6.17 (14th ed. 1974); *In re Freidrich,* 100 Fed. 284, 286 (7th Cir.1900). Against this backdrop, the legislative history cannot be read to be anything more than what it purports to be—an "illustrative" list which merely indicates what *might* qualify for exemption under Section 522(b)(2)(A). It is up to the courts to determine whether a given statute confers an exemption, *without* resort to bankruptcy law, much less resort to its legislative history.

4. *The Bankruptcy Code has not "implicitly repealed" ERISA § 206(d)(1).*

*Goff* also suggested that the Bankruptcy Code somehow *overruled* ERISA:

It is well to make a final telling observation on the relationship between ERISA and the Bankruptcy Code. While ERISA preempts state law, 29 USC § 1144(a), it clearly was not intended to affect the operation of other federal law.... Thus, ERISA's specific provision precluding interference with the operation of federal law renders the Bankruptcy Code effective over any ERISA provisions to the contrary.... ERISA was not intended to affect the operation of other federal laws including federal bankruptcy laws. If a distinction is created by operation of bankruptcy law, which might conflict with ERISA, bankruptcy law prevails. Even assuming arguendo that the court-drawn distinction conflicts with federal pension law, it is nonetheless en-

forceable if valid under federal bankruptcy law.

*Id.* at 587 and 589 (emphasis added). The logic is in error.

*Goff* all too easily embraces the idea that the Bankruptcy Code impliedly repealed or altered ERISA. *See* 29 USC § 1144(d). That the Code *could have* done so is far from justifying the conclusion that it *did.* Conflicts between other federal law and

the Bankruptcy Code cannot be presumed.... The proper analysis is to determine whether the two statutes can be construed so as to avoid any conflict, and if such a way cannot be found, then decide upon a resolution which will do the most to serve the congressional intent impressed in both statutes and will least undercut that intent as expressed in either one.

*In re Witte,* 92 B.R. 218, 223–224 (Bankr. W.D.Mich.1988). *Goff,* when it found a purported congressional "intent to limit any exemption of pension funds" was relying on what it apparently viewed as a conflict between the Code and "ERISA provisions to the contrary." *Goff,* 706 F.2d at 587. *Goff* first found a subsequent, generalized congressional intent to limit pension plans in bankruptcy, then concluded that that intent "trumped" the earlier congressional intent expressed in ERISA to protect those very same pensions plans. For want of a better term, we shall call this selective implicit amending "repeal by implication."

The Supreme Court has warned that "courts are not at liberty to pick and choose among congressional enactments, and when two statutes are capable of co-existence, it is the duty of the courts, absent a clearly expressed congressional intention to the contrary, to regard each as effective." *Morton v. Mancari,* 417 U.S. 535, 551, 94 S.Ct. 2474, 2483, 41 L.Ed.2d 290 (1974). Repeal by implication is greatly disfavored, and the presumption is always against the intention to repeal by implication. *Watt v. Alaska,* 451 U.S. 259, 101 S.Ct. 1673, 68 L.Ed.2d 80 (1981). An intent to repeal by implication must be clear, unequivocable, and necessary for the survival

of the repealing statute or provision. *St. Martin Evangelical Lutheran Church v. South Dakoka,* 451 U.S. 772, 101 · S.Ct. 2142, 68 L.Ed.2d 612 (1981). "[T]he views of a subsequent Congress form a hazardous basis for inferring the intent of an earlier one." *United States v. Price,* 361 U.S. 304, 313, 80 S.Ct. 326, 332, 4 L.Ed.2d 334 (1960); *Mackey,* 486 U.S. at ――, 108 S.Ct. at 2190, 100 L.Ed.2d at 850 (1988). Moreover, courts will not hold to a repeal by implication if a reasonable ground to hold to the contrary can be found. *Lewis v. United States,* 244 U.S. 134, 37 S.Ct. 570, 61 L.Ed. 1039 (1917); *United States v. Jackson,* 302 U.S. 628, 58 S.Ct. 390, 82 L.Ed. 488 (1938); *see also* Seiden, "Do ERISA and the Bankruptcy Code Conflict as to Whether a Debtor's Interest in or Rights Under a Qualified Plan Can be Used to Pay Claims?," 61 Am.Bankr.L.J. 301, 317–319 (1987).[31]

With these affirmative duties to harmonize in mind, this court holds that Section 522(b)(2)(A) does not implicitly repeal ERISA Section 206(d). The Bankruptcy Code section does not purport to limit in bankruptcy a debtor's access to federal exemptions available (and readily honored)

outside of bankruptcy. *See* discussion *supra* at Part II.B.2.b. There is no need therefore to find a conflict with ERISA § 206(d) and hence, no bankruptcy barrier to honoring ERISA's exemption for qualified plans by way of Section 522(b)(2)(A), to the extent such an exemption is otherwise available under applicable nonbankruptcy law.[32]

### III. *Conclusion*

I conclude therefore that Section 522(b)(2)(A) permits a debtor who has elected the "state and other federal law" exemption scheme to claim his or her ERISA pension benefit plan as exempt under "other federal law," to wit, ERISA § 206(d), to the extent therein provided.[33] As this court said in its earlier decision, it is up to Congress to amend ERISA, not the courts. If creditors and courts find it objectionable to permit persons such as Dr. Komet to shelter large sums of money in ERISA tax-qualified plans, their appeal should be to Congress, not to this court.

The prior reasoning of this court on the pre-emption issue is, on reconsideration, affirmed. The holding, however, is reversed, and the objections to the claim of exemp-

---

**31.** [O]n June 29, 1984, the Bankruptcy Code was amended, and thereafter on August 13, 1984 the anti-alienation provisions of ERISA were amended by the Retirement Equity Act of 1984 ("REA"). REA amended the ERISA requirements that plans must prohibit benefit alienation and assignment by adding an exception to ERISA and the Internal Revenue Code.... The Bankruptcy Code amended specific portions of ERISA that referred to the word "bankruptcy" to "the Bankruptcy Act," or to "that Act." Thus the impact of the Bankruptcy Code on certain provision of ERISA was considered and amendments made. To hold that a significant aspect of ERISA was repealed by implication when other less significant provisions of ERISA were specifically amended would be unusual.
Seiden at 320.

**32.** This analysis does not disturb *Goff's* holding regarding Section 541(c)(2). I agree that that section is ineffective to insulate all ERISA plans from coming into the bankruptcy estate. Indeed, were it otherwise, Congress would not have needed to have enacted Section 522(d)(10)(E), because Section 541(c)(2) would afford all the protection required for such plans. I also acknowledge that Section 522(d)(10)(E) of

the Bankruptcy Code is less generous than ERISA § 206(d)(1) (exempt to the extent reasonably necessary for support), but that variance does not affect how a bankruptcy court should construe ERISA § 206(d)(1). The generic exemption alternative is a parallel exemption scheme. It does not purport to *duplicate* the scope of exemptions available under the existing exemption scheme. It most certainly did not purport to *replace* existing exemptions.

**33.** The bankruptcy court in the usual instance will have to determine whether benefits have been pledged or otherwise drawn down to the extent permitted by ERISA, as those benefits will of course not be exempt. That issue was not raised by any of the objecting parties in this case, however. This also means that, in the usual instance, the bankruptcy court may have to make the determination whether the plan is an ERISA-regulated plan. These tasks are imposed by the Bankruptcy Code itself, the provisions of which preempt ERISA. 29 U.S.C. § 1144(d). Note that this fact does not save *Texas'* attempt at exemption for these plans, however. Congress confers the power to construe existing exemptions. It did not, in so doing, *federalize* those exemptions. *See In re Dyke,* 99 B.R. at 351, 19 BCD at 111.

tion for the retirement benefits here in question, asserted as it is under the "existing exemptions" scheme of Section 522(b)(2)(A), are denied. The benefits accruing from the plans in question may be retained by the debtors as their exempt property.

So ORDERED.